## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

TEVIN SCOTT                                         CIVIL ACTION

VERSUS                                             23-697-SDD-SDJ

BRANDON COMPANY OF
TENNESSEE, LLC.

### RULING

This matter is before the Court on the Motion for Summary Judgment[1] by Defendant, Brandon Company of Tennessee, LLC ("Defendant").  Plaintiff, Tevin Scott ("Plaintiff"), has filed an Opposition[2] to this motion, to which Defendant filed a Reply,[3] and Plaintiff filed a Sur-reply.[4]  For the following reasons, the Court finds that Defendant's motion should be GRANTED.

## I.    FACTUAL BACKGROUND

Defendant is a flooring company with a location in Prairieville, Louisiana. Mike Scichowski ("Scichowski") has been the Branch Manager for this location since 2017.[5] Since that time, this location has employed between ten and fifteen employees; currently, there are twelve employees in addition to Scichowski, consisting of four truck drivers, four warehouse workers, and four office workers.  At present, all warehouse workers and drivers are African American, and two of the four office workers are African American.[6]

---

[1] Rec. Doc. 12.
[2] Rec. Doc. 18.
[3] Rec. Doc. 21.
[4] Rec. Doc. 26.
[5] Rec. Doc. 12-1, Scichowski Declaration, ¶ 2.
[6] *Id.* at ¶ 3.

Scichowski interviewed Plaintiff for a driver position and first hired him to begin working on July 6, 2020.[7]  Plaintiff testified that he could not recall Scichowski ever making racial comments to him.[8]   Plaintiff claims he was subjected to racially derogatory comments by white driver Richard Barnes ("Barnes"), who worked for Defendant during the relevant time period.[9]  For the duration of Plaintiff's employment with Defendant, he shared a truck with Barnes, with Barnes driving night shifts and Plaintiff driving daytime routes.  Because of this schedule, Plaintiff's interaction with Barnes was limited.[10]

Approximately two months after Plaintiff's employment began, in August 2020, he notified Scichowski that his fiancé suffered a difficult pregnancy resulting in their son being delivered prematurely. Scichowski responded to Plaintiff's message that he was "praying for a good report."[11]   However, about a month later, on September 28, 2020, Plaintiff resigned because he was assigned routes too far for him to regularly see his son, who was still in the Neonatal ICU.  Scichowski accepted Plaintiff's resignation and wished him the best.[12]

Plaintiff worked only three months for Defendant in 2020, and he testified that he did not have any problems with any co-employees during that time, including Barnes.[13]  Sadly, Plaintiff's son passed away a few months after his resignation, and he contacted Scichowski about being rehired.  Scichowski was supportive and asked Plaintiff to come visit the next day to discuss his employment.[14]  Plaintiff was rehired by Scichowski on

---

[7] Rec. Doc. 12-4, Scott Depo, pp. 31-32; Rec. Doc. 12-5, p. 1.
[8] *Id.* at pp. 30-32.
[9] *Id.*
[10] *Id.* at pp. 32-33; Rec. Doc. 12-1, Scichowski Declaration, ¶ 4.
[11] Rec. Doc. 12-6, pp. 1-2; Rec. Doc. 12-1, Scichowski Declaration, ¶ 5.
[12] Rec. Doc. 12-6, p. 3; Rec. Doc. 12-1, Scichowski Declaration, ¶ 6.
[13] Rec. Doc. 12-4, Scott Depo, p. 41.
[14] Rec. Doc. 12-6, pp. 5-6.

February 10, 2021.[15]

Not long after Plaintiff returned to work, he began complaining about various issues, including being reassigned routes of other drivers, purportedly claiming that he did not get paid enough to do others' jobs.[16]  Plaintiff admitted that he complained about having to take routes from co-driver Rico Seldon ("Seldon"); he also admitted that, while he believed this to be unfair, it was not racially discriminatory because Seldon is also African American.[17]  Plaintiff also complained about safety issues with some of the trailers.[18]

On October 8, 2021, Barnes had driven the night shift and was returning from Jackson, Mississippi in the early morning hours.  He was significantly delayed due to a traffic accident and was later than usual returning to Defendant's premises.  Defendant claims that, due to the traffic delay and Barnes' health issues, which include diabetes, Barnes desperately needed to urinate when he returned.  Not confident that he could make it inside to the restroom, Barnes exited the truck and urinated on the concrete underneath the truck.[19]

Plaintiff observed Barnes urinating outside the truck and claims Barnes yelled at him "F*** you, boy"; Plaintiff became emotional and upset, but he said nothing and walked away.[20]  Plaintiff immediately reported this incident to Warehouse Manager Lloyd Prater ("Prater"), and Prater advised Plaintiff to report the incident to Scichowski.[21]  Plaintiff took

---

[15] Rec. Doc. 12-4, Scott Depo, pp. 59-60; Rec. Doc. 12-1, Scichowski Declaration, ¶ 7.
[16] Rec. Doc. 12-1, Scichowski Declaration, ¶ 7; Rec. Doc. 12-8.
[17] Rec. Doc. 12-4, Scott Depo, p. 120.
[18] *Id*. at p. 89.
[19] Rec. Doc. 12-1, Scichowski Declaration, ¶ 9.
[20] Rec. Doc. 12-4, Scott Depo, pp. 45-47.
[21] *Id*. at p. 81; Rec. Doc. 12-12, Prater Declaration, ¶ 4.

a picture of the urine underneath the truck and texted it to Scichowski.[22]

Defendant claims the following occurred after Plaintiff reported the incident. Scichowski arrived and met with Plaintiff to hear his side; Barnes had already gone home. Plaintiff advised that Barnes urinated all over the truck, including the door handle, on the fuel tanks, and inside the truck. Scichowski investigated and found a puddle in front of the trailer but did not observe urine anywhere else. Scichowski looked inside the truck and observed only a wet spot on the driver's seat and what appeared to be melted ice cubes on the floorboard; Scichowski smelled the spot on the seat and advised Plaintiff it was not urine. Scichowski began cleaning the truck so Plaintiff could run his routes. Scichowski claims he cleaned the truck with bleach, used a mop to clean the outside of the truck, and used other cleaning solutions and paper towels to scrub down the inside of the truck. Scichowski placed a plastic trash bag over the driver's seat so Plaintiff's pants would not get wet from the cleaning.[23]

Plaintiff acknowledged that Scichowski told him he would clean the truck and that Scichowski advised that there was no urine inside the truck.[24]   Although Plaintiff purportedly did not confirm that Scichowski cleaned the truck, he continued to complain to Scichowski that he was uncomfortable driving the truck.[25]   Defendant maintains the only other truck available had a manual transmission, which Plaintiff admitted he is not qualified to drive.[26]   Because there was no truck available that Plaintiff could drive, and he would not accept that Scichowski had cleaned the truck, Scichowski sent Plaintiff

---

[22] Rec. Doc. 12-4, Scott Depo, pp. 70-71; Rec. Doc. 12-6, p. 16; Rec. Doc. 12-1, Scichowski Declaration, ¶ 10.
[23] Rec. Doc. 12-1, Scichowski Declaration, ¶ 10; Rec. Doc. 12-11.
[24] Rec. Doc. 12-4, Scott Depo, pp. 99-100.
[25] Rec. Doc. 12-1, Scichowski Declaration, ¶ 11.
[26] Rec. Doc. 12-4, Scott Depo, p. 96.

home.[27]  Because he sanitized the truck for Plaintiff, Scichowski concluded that Plaintiff's refusal to drive the truck for his route was unjustified.[28]  No further actions were taken to sanitize the truck, and after sending Plaintiff home, Barnes drove the truck later that day on his night shift.[29]

Scichowski also called Barnes to hear his side of the story.  Barnes reported that he was late returning due to the traffic, that Plaintiff was in a hurry to start his shift, and Barnes urinated only outside by the truck because he could not have made it to the bathroom. Barnes denied directing profane language towards Plaintiff; rather, Barnes claimed that Plaintiff was aggressive towards him, and he felt physically threatened by Plaintiff. Barnes further claimed that he spilled his drink in the cab due to Plaintiff rushing him to turn the truck over.[30]

Scichowski summarized his notes and findings from the investigation of this incident.[31]  Scichowski concluded he could not determine who was the aggressor in the confrontation, nor whether Barnes made a racially offensive comment. Scichowski determined that Plaintiff's version of events was unlikely based on the following: (1) Plaintiff had always been vocal in expressing his complaints, so Scichowski deemed it out of character for Plaintiff to walk away if Barnes offended him; and (2) Plaintiff was large, strong, and in his mid-twenties as compared to Barnes being nearly sixty and disabled such that he could not even pass the Department of Transportation's physical exam, which resulted in Barnes being terminated one month later.[32] Scichowski

---

[27] Rec. Doc. 12-1, Scichowski Declaration, ¶ 11.
[28] *Id.*
[29] *Id.* at ¶ 12.
[30] *Id.* at ¶ 13; Rec. Doc. 12-11.
[31] *Id.* at ¶ 14; Rec. Doc. 12-2.
[32] *Id.* at ¶ 15.

concluded that Barnes only urinated underneath the truck, not all over and inside the truck as Plaintiff claimed.  Scichowski personally inspected the truck and maintains that he fully cleaned and sanitized the truck before turning it over to Plaintiff, but Plaintiff persisted in refusing to drive the truck.[33]

On October 11, 2021, Scichowski terminated Plaintiff for refusing to run his route. Scichowski  maintains his decision had nothing to do with Plaintiff's race or his accusation that Barnes made a racially offensive comment towards him.[34] Scichowski replaced Plaintiff with another African American driver.[35]  Moreover, one month later, Scichowski also replaced Barnes with another African American driver.[36]  Defendant maintains Plaintiff has no evidence that any white driver who refused to run a route was not terminated.[37] Plaintiff admitted under oath that he did not observe Barnes urinating inside the truck and that he assumed the wet seat was also urine based on observing Barnes urinate outside the truck.[38]  Indeed, Plaintiff's text message to Scichowski stated that an "unknown fluid" was on the seat in the truck.[39]  Plaintiff admits that he could have cleaned the truck more thoroughly if he was displeased with Scichowski's efforts; however, Plaintiff maintains it was not his responsibility to clean the truck.[40] Scichowski maintains that Plaintiff was terminated for refusing to run his route; Plaintiff insists that he did not refuse to run his route; rather, he refused to drive a truck that had not been properly sanitized.[41]

---

[33] *Id.* at ¶ 16.
[34] *Id.* at ¶ 17; Rec. Doc. 12-4, Scott Depo, pp. 93-94; Rec. Docs. 12-9 and 12-10.
[35] Rec. Doc. 12-1, Scichowski Declaration, ¶ 19.
[36] *Id.* at ¶ 20.
[37] Rec. Doc. 12-4, Scott Depo, p. 120.
[38] *Id.* at pp. 105-106, 113.
[39] *Id.* at p. 105; Rec. Doc. 12-6, p. 16.
[40] Rec. Doc. 12-4, Scott Depo, pp. 93-94.
[41] *Id.*; Rec. Doc. 12-9; Rec. Doc. 18-2, Scott Declaration, ¶ 33.

Defendant contends Plaintiff could recall only two instances that Barnes made racially offensive comments to him: (1) when Plaintiff returned to work after the death of his infant son, Barnes allegedly stated to him that he was a young African American man that could have more kids; and (2) Barnes saying "F*** you, boy" after Plaintiff observed him urinating under the truck.[42]   Plaintiff argues he provided these two incidents as examples, but Barnes regularly used the "n-word" and "boy" when addressing African American co-workers.[43]  Defendant claims Barnes used the word "boy" when addressing white co-workers as well.[44]  Further, Scichowski contends he terminated a white driver for using the "n-word" at work.[45]

Plaintiff has denied or qualified most of Defendant's statements of fact.[46]  Plaintiff paints a different picture of the events leading up to and surrounding his termination. Plaintiff maintains that, during his employment, Defendant employed "at least twenty people" in Louisiana, including the cities of Prairieville, Baton Rouge, Rayne, New Orleans, and Covington.[47]  Plaintiff claims he was a "great employee" who never received any complaints about his job performance,[48] and he notes that he was hired by Defendant twice.[49]  Plaintiff acknowledges he had a history of reporting workplace safety violations and instances of mistreatment and purported discrimination to Defendant.[50]  Plaintiff claims Scichowski ignored his complaints and similar complaints made by other African

---

[42] Rec. Doc. 12-4, Scott Depo, pp. 13-14.
[43] Rec. Doc. 18-5, Scott Depo, p. 44; Rec. Doc. 18-2, Scott Declaration, ¶ 27.
[44] Rec. Doc. 12-12, Prater Declaration, ¶ 5; Rec. Doc. 12-13, Early Declaration, ¶ 5.
[45] Rec. Doc. 12-1, Scichowski Declaration, ¶ 18; Rec. Doc. 12-13, Early Declaration, ¶ 4.
[46] *See* Rec. Doc. 18-1.
[47] Rec. Doc. 18-2, Scott Declaration, ¶¶ 5-6.
[48] Rec. Doc. 18-1, p. 16, ¶ 4 (citing Rec. Doc. 18-9, Seldon Declaration, ¶ 3).
[49] Rec. Doc. 18-2, Scott Declaration, ¶ 3.
[50] *Id.* at ¶¶ 9, 17.

American employees,[51] while Scichowski took the complaints of white employees seriously.[52]

Plaintiff and other African American drivers employed by Defendant claim that African American drivers were required to assist Barnes in various ways, including detaching and reattaching his trailer and adjusting Barnes' truck equipment, steering wheel mirrors, and seat. If Barnes complained to Scichowski, Plaintiff contends he and other African American drivers were reprimanded loudly and in a demeaning fashion.[53] Conversely, Barnes was never required to assist Plaintiff or other African American drivers in truck adjustments.[54]  Additionally, Barnes had his own trailer that was in good condition while Plaintiff and other African American drivers were forced to use unsafe trailers with holes and leaks.[55]

Plaintiff also claims Barnes picked unprovoked fights with him and other African American drivers, used profanity towards them, and called them "boy" or the n-word; yet, Barnes was never disciplined for this conduct.[56] When Plaintiff returned to work after his son passed away, Barnes told Plaintiff "[y]ou're a young African American man, you can just make more of them."[57]  Barnes was not disciplined for this comment.[58]

Plaintiff further claims Defendant ignored safety complaints and continuously violated workplace safety regulations which resulted in workplace injuries to African

---

[51] *Id*. at ¶ 25; Rec. Doc. 18-8, Boatner Declaration, ¶ 7; Rec. Doc. 18-9, Seldon Declaration, ¶ 12.
[52] Rec. Doc. 18-2, Scott Declaration, ¶ 25.
[53] *Id*. at ¶¶ 24-25; Rec. Doc. 18-8, Boatner Declaration, ¶ 9; Rec. Doc. 18-9, Seldon Declaration, ¶ 10.
[54] Rec. Doc. 18-2, Scott Declaration, ¶ 13.
[55] *Id*. at ¶ 19; Rec. Doc. 18-9, Seldon Declaration, ¶ 12; Rec. Doc. 18-7.
[56] Rec. Doc. 18-2, Scott Declaration, ¶ 27; Rec. Doc. 18-9, Seldon Declaration, ¶¶ 8-9; Doc. 18-8, Boatner Declaration, ¶¶ 10-11.
[57] Rec. Doc. 18-5, Scott Depo, p. 44; Rec. Doc. 18-2, Scott Declaration, ¶ 28.
[58] *Id*. at p. 45.

American employees.[59]

Plaintiff disputes that the reason he was terminated on October 8, 2021 was because he refused to run his route; rather, Plaintiff maintains he never refused to run his route.[60]  Plaintiff claims that on this date, when Barnes returned, Plaintiff began his usual work routine in detaching Barnes' trailer; during so, Barnes allegedly became "belligerent and aggressively approached" Plaintiff, yelled profanities at Plaintiff, including "F*** you, boy," then pulled out his penis and began urinating "all over" the truck.[61]

Plaintiff contends he took pictures of the fluids both outside and inside the truck and texted the pictures to Scichowski in accordance with Prater's instructions.[62] Scichowski acknowledged he received the pictures prior to arriving to work.[63]  When Scichowski arrived, Plaintiff claims he was told "it'll be fine. I'll throw some water on it."[64] Uncomfortable with this response, Plaintiff requested that the truck be properly sanitized; Scichowski then put soap and water in a bucket and tossed the bucket on the outside of the truck.[65]  Plaintiff contends Scichowski refused to clean the driver's seat and told Plaintiff he could run his route or go home, then Scichowski sent Plaintiff home before he could respond.[66]  Later that day, Plaintiff texted Scichowski a message expressing his belief that he was unfairly treated and complaining about Barnes' racist comments; Scichowski responded, "I [sic] sorry you feel that way! We will talk Monday morning at

---

[59] Rec. Doc. 18-2, Scott Declaration, ¶¶ 8-9, 17-18; Rec. Doc. 18-8, Boatner Declaration, ¶¶ 5-6; Rec. Doc. 18-9, Seldon Declaration, ¶¶ 12-13.
[60] Rec. Doc. 18-2, Scott Declaration, ¶ 33.
[61] Rec. Doc. 18-2, Scott Declaration, ¶¶ 29, 30; Rec. Doc. 18-4.
[62] Rec. Doc. 18-2, Scott Declaration, ¶ 31; Rec. Doc. 18-4, pp. 1-2; Rec. Doc. 12-6.
[63] Rec. Doc. 12-1, Scichowski Declaration, ¶ 10.
[64] Rec. Doc. 18-2, Scott Declaration, ¶ 32.
[65] *Id.*
[66] *Id.* at ¶¶ 31-32.

6:00 am."[67]

Plaintiff showed up to work on Monday, October 11, 2021 as directed by Scichowski; however, when Plaintiff raised his complaints, Scichowski fired him. Plaintiff notes that he was credited a full ten-hour workday although he was only there for four hours.[68]

Plaintiff filed this lawsuit under Title VII of the Civil Rights Act of 1964,[69] the corresponding Louisiana Employment Discrimination Law ("LEDL"),[70] and the Louisiana Anti-retaliation Law.[71] Plaintiff claims he has been subjected to race discrimination, a racially hostile work environment, and retaliation. Defendant moves for summary judgment on all claims.

## II.    CHALLENGED DECLARATIONS

Defendant moves to strike several statements in Plaintiff's Statement of Additional Material Facts, claiming they are based on inadmissible statements in Plaintiff's and other witnesses' Declarations. Specifically, Defendant claims portions of these Declarations are not based on personal knowledge, are statements the declarants are not competent to make, constitute legal conclusions and/or conclusory opinions, and in Plaintiff's case, contradict Plaintiff's sworn deposition testimony. The Court will evaluate each Declaration and strike inadmissible statements as set forth below.

---

[67] Rec. Doc. 18-3.
[68] Rec. Doc. 18-2, Scott Declaration, ¶ 35; Rec. Doc. 18-14.
[69] 42 U.S.C. § 2000e *et seq.*
[70] La. R.S. 23:301 *et seq.*
[71] La. R.S. 51:2256.

### A. Plaintiff's Declaration

#### 1. Personal Knowledge

In paragraphs 5 and 6, Plaintiff claims he recalls "at least twenty employees" working for Defendant while he worked there, staking his purported personal knowledge on the fact that he knows "some of the employees by name and others by face and/or positions." He proceeds to name thirteen employees and claims other employees he never met worked in different Louisiana locations. Defendant submitted uncontroverted evidence by Scichowski, an employee in management, who attested that Defendant never employed more than ten to fifteen employees, and Karen Sales, identified by Plaintiff, is in Human Resources and lives and works in Arkansas.[72] Defendant moves to strike these paragraphs in Plaintiff's Declaration for lack of personal knowledge. The Court agrees.

While summary judgment affidavits need not contain any magic language, the affiant's personal knowledge and competence must be reasonably inferred from their positions and the nature of their participation in the matters to which they swore.[73] In *Russell v. Parkview Baptist School, Inc.*,[74] another section of this Court noted that,

> [T]he Fifth Circuit has also quoted with approval a Ninth Circuit opinion which "found it proper in the summary judgment context for district courts to rely on affidavits where the affiants' 'personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore.'" *Id.* (quoting *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)). Thus, in *DIRECTV*, the Fifth Circuit declined to strike an affidavit for lack of personal knowledge because it was within the affiant's position—or his "sphere of responsibility"—to be familiar with the investigation discussed in the

---

[72] Rec. Doc. 22-1, Scichowski Supp. Declaration, ¶¶ 1-2; Rec. Doc. 12-1, Scichowski Declaration, ¶ 3.
[73] *In re Green*, 968 F.3d 516, 523-24 (5th Cir. 2020) (citations omitted).
[74] 2021 WL 1147162, at *3 (M.D. La. Mar. 25, 2021).

affidavit, so his knowledge could be "reasonably inferred." *Id*. (quoting *Hodges v. Exxon Corp.*, 563 F. Supp. 667, 669–70 (M.D. La. 1983)).

There is nothing before the Court to demonstrate Plaintiff's competence and/or personal knowledge to testify about Defendant's employees, titles, and the locations in which they are employed.  Plaintiff claims he has personal knowledge of the number of persons Defendants employs, but this is based only on what he can recall.  Further, he could only name thirteen purported employees, then claims there are more than twenty, some of whom he has not met and cannot name.  These statements are not based on Plaintiff's personal knowledge and cannot controvert Scichowski's Declaration regarding the number of Defendant's employees because it is not within Plaintiff's "sphere of responsibility" to have such knowledge. As a manager, it is within Scichowski's sphere of responsibility to know the number and status of Defendant's employees. Accordingly, paragraphs 5 and 6 of Plaintiff's Declaration are stricken for lack of personal knowledge.

### 2.  Legal Conclusions and Opinions

Defendant further claims Plaintiff's Declaration contains legal conclusions and opinions offered as "facts." Conclusory statements without proper support do not meet the requirements of Rule 56(e).[75] Further, the generalized testimony of a party's subjective belief is insufficient to create an issue for trial when the beliefs are not substantiated.[76] While a witness is indeed capable of attesting to their own personal

---

[75] *See Goodman v. Life Ins. Co. of North America*, 244 F.3d 138 (5th Cir. 2000)(citing *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)("Although we consider the evidence in the light most favorable to the nonmoving party, ... conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment.")(internal citations omitted); and *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)); *see also Miller Exploration Co. v. Energy Drilling Co.*, 130 F.Supp.2d 781, 785 (W.D. La. 2001).
[76] *Bickerstaff v. Whitney Natl. Bank*, No. 96-30231, 1996 WL 595654, at *3 (5th Cir. Sept. 20, 1996); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152-53 (5th Cir. 1995).

experiences and feelings, such testimony cannot create genuine issues of material fact based on subjective opinions and recitation of legal conclusions. General conclusory allegations do not become adequate summary judgment evidence simply because they are put in affidavit form.[77]

"Rule 701 allows a lay witness to express opinions that are based on the witness's own perception, helpful in understanding the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge … However, a witness is not permitted to opine about legal conclusions or to tell the jury what result to reach."[78]

For example, in *Pennington v. County of Galveston*, the plaintiff submitted an affidavit in opposing her employer's motion for summary judgment on the plaintiff's age-based harassment and discrimination claims.[79]  The affidavit was summarized as follows:

> According to Pennington's complaint and her own affidavit the County "intentionally subjected (her) to abusive hazardous and unhealthy working conditions, ... subjected her to outrageous and offensive verbal abuse" from "a human resources and professional services director," subjected her "to repeated offensive age related statements from department heads and staff," required her to work "under a Justice Administrative supervisor who uttered maliciously and belittling statements to her in front of co-workers" and exposed her to "unreasonable risks to (her) health and safety."[80]

The court granted summary judgment, finding that the plaintiff's "affidavits are textbook examples of general allegations and legal conclusions which will not satisfy a nonmovant[']s burden."[81]

---

[77] *Castillo v. Bowles*, 687 F.Supp. 277, 280 (N.D.Tex.1998).
[78] *LeBlanc v. Stoneham*, No. 6:16-00283, 2018 WL 344146, at *2 (W.D. La. Jan. 9, 2018)(citing *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)).
[79] No. 6-08-148, 2010 WL 569894 (S.D. Tex. Feb. 11, 2010).
[80] *Id.* at *1.
[81] *Id.* at *2.

Here, Plaintiff's paragraphs 8,[82] 18,[83] and 26[84] are similar to the "textbook examples of general allegations and legal conclusions" held inadmissible in *Pennington*. For the same reasons, these paragraphs are stricken.

### 3. Sham Affidavit Doctrine

Defendant also raises the sham affidavit doctrine, arguing that some statements in Plaintiff's Declaration directly contradict his prior sworn deposition testimony. It is long settled that the Fifth Circuit "does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."[85] A declaration that contradicts the declarant's deposition testimony will not constitute sufficient evidence to create a fact issue.[86] "'Conflicts between deposition testimony and subsequent affidavits or declarations are resolved in favor of the deposition testimony unless the conflict is explained.'"[87]

However, the sham affidavit doctrine "'is applied sparingly' and may be invoked only where there is 'some inherent inconsistency between an affidavit and a

---

[82] "Brandon provided an unsafe environment and discriminated against me and other African Americans by subjecting us to the unsafe environment and ignoring our complaints of safety issues and racial abuse. Brandon permitted racist behavior towards me and other African American drivers. Brandon failed to follow its Employee Handbook and work procedures to prevent the discrimination against me."

[83] "Brandon allowed safety violations to be committed that endangered me and other African American drivers."

[84] "Brandon failed to discipline or terminate white drivers for behaving inappropriately or committing acts of abuse against me and other African American drivers."

[85] *EEOC v. Modern Group, Ltd.*, 725 F.Supp.3d 577, 599 (E.D. Tex. 2024)( citing *Seigler*, 30 F.4th at 477 (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)); *accord Benedetti v. Wal-Mart Stores Tex., L.L.C.*, 788 F. App'x 945, 949 (5th Cir. 2019); *Fornah v. Schlumberger Tech. Corp.*, 737 F. App'x 677, 682 n.3 (5th Cir. 2018)).

[86] *Id.* (citing *Free v. Wal-Mart La., L.L.C.*, 815 F. App'x 765, 766 (5th Cir. 2020) (citing *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000), *cert. denied*, 531 U.S. 1073, 121 S.Ct. 766, 148 L.Ed.2d 667 (2001))).

[87] *Id.* (quoting *Colindres v. QuietFlex Mfg.*, 427 F. Supp. 2d 737, 746 (S.D. Tex. 2006) (citing *Valleza v. City of Laredo*, 331 F. Supp. 2d 579, 582-83 (S.D. Tex. 2004))).

deposition.'"[88] When a subsequent affidavit "merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."[89] An affidavit or declaration is considered supplementary if it clarifies or provides additional facts not testified to in the prior deposition and when the prior deposition testimony "only glanced upon the disputed issue."[90]

"The inquiry, as a whole, is aimed at gleaning whether the later affidavit is 'so markedly inconsistent with the affiant's prior deposition as to constitute an obvious sham.'"[91] Importantly, "the bar for applying the [sham affidavit] doctrine is a high one, typically requiring affidavit testimony that is 'inherently inconsistent' with prior testimony."[92] If a court determines that a subsequent affidavit or declaration contradicts prior deposition testimony, it is properly excluded from consideration on a motion for summary judgment.[93] "Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists."[94]

---

[88] *Aqrawi v. Am. Mod. Prop. & Cas. Co.*, 555 F. Supp. 3d 467, 473 (S.D. Tex. 2021) (quoting *Guerrero v. Total Renal Care, Inc.*, 932 F. Supp. 2d 769, 776 (W.D. Tex. 2013)); *Cruz v. R2Sonic, LLC*, 405 F. Supp. 3d 676, 684 (W.D. Tex. 2019) (quoting *Eure v. Sage Corp.*, 61 F. Supp. 3d 651, 658 (W.D. Tex. 2014)).
[89] *Durant v. Brooks*, 826 F. App'x 331, 336 (5th Cir. 2020) (quoting S.W.S. Erectors, Inc., 72 F.3d at 496).
[90] *Sabre Indus. Inc. v. Module X Sols., L.L.C.*, 845 F. App'x 293, 298 (5th Cir. 2021).
[91] *Id.* (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)); *Winzer v. Kaufman County*, 916 F.3d 464, 472 (5th Cir. 2019), *cert. denied*, —— U.S. ——, 141 S. Ct. 85, 207 L.Ed.2d 170 (2020).
[92] *Seigler*, 30 F.4th 472, 477 (5th Cir. 2022); *Winzer*, 916 F.3d at 472.
[93] *Free*, 815 F. App'x at 767 (affirming district court's exclusion of plaintiff's affidavit where she provided no explanation for its contradictory statements); *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 920-21 (5th Cir. 2009) (affirming district court's exclusion of plaintiff's sworn statement, which was inconsistent with her prior deposition testimony).
[94] *Klocke v. Watson*, 597 F. Supp. 3d 1019, 1025 (N.D. Tex. 2022) (citing *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984)), *aff'd*, No. 22-10348, 2023 WL 2823060 (5th Cir. Apr. 7, 2023); *see Seigler*, 30 F.4th at 477 ("[A] nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." (quoting *Doe*, 220 F.3d at 386)).

In the present case, while Plaintiff's Declaration significantly expands on his deposition testimony, the Court cannot find that, in its entirety, the Declaration flatly contradicts his prior deposition testimony, except in the following ways. In paragraph 27, Plaintiff attests that Barnes referred to "us" as "boy" or the n-word. To the extent Plaintiff includes himself in the "us" with reference to the n-word, this contradicts Plaintiff's sworn deposition testimony that he could not recall a time that Barnes directed the n-word at him,[95] and he only recalled Barnes using the n-word with "the other drivers."[96] Accordingly, the Court will disregard that portion of the statement and rely on Plaintiff's deposition testimony.

The Court rejects Plaintiff's contention that testifying "I don't recall" leaves the door wide open to expand testimony on key elements of his claims. In *Adams Family Tr. v. John Hancock Life Ins. Co*., the Court held that an affidavit could not defeat a motion for summary judgment where the affidavit affirmatively contradicted the plaintiff's own testimony.[97] In her prior testimony, the plaintiff in *Adams Family Tr*. stated that she "did not recall" whether she received certain documents; however, in the subsequent affidavit, plaintiff averred that she had never received the documents.[98] Because the affidavit contradicted earlier testimony without explanation, the court disregarded the affidavit.[99] Similarly, in *Free v. Wal-Mart Louisiana, L.L.C*., the Fifth Circuit, in an unpublished opinion, held that the court properly struck an affidavit that, without explanation, conflicted with prior deposition testimony.[100] The plaintiff in *Free* changed her recollection of key

---

[95] Rec. Doc. 12-4, Plaintiff's Depo, p. 50.
[96] *Id*. at 51.
[97] 2010 WL 3256381, at *7 (W.D. La. 2010), *aff'd*, 424 F. App'x 377 (5th Cir. 2011).
[98] *Id*. at *7.
[99] *Id*.
[100] 815 F. App'x 765, 766–67 (5th Cir. 2020).

conversations, in a manner that constituted more than mere supplementation of prior testimony.[101] The court concluded that the district court was therefore reasonable in its application of the sham affidavit doctrine, and the affidavit was properly stricken.[102]

In paragraphs 30 and 31 of Plaintiff's Declaration, he attests that Barnes' urine was inside the truck.  This is contradicted by Plaintiff's deposition testimony that he did not see Barnes urinate inside the truck; rather, he assumed the fluid in the truck was urine because Barnes urinated outside the truck.[103] And, Plaintiff has offered no evidence to substantiate his assumption that urine was inside the truck. Accordingly, these paragraphs are stricken.  In paragraph 35, Plaintiff attests Barnes was racist from the first day Plaintiff began working for Defendant; this flatly contradicts Plaintiff's sworn deposition testimony that he had no problems with Barnes in the first three months Plaintiff worked for Defendant in 2020, before his resignation.   Accordingly, that statement in Paragraph 35 is stricken.

### B.  Rico Seldon's Declaration

Applying the law set forth above, the following Declaration statements by Rico Seldon are stricken:

- Paragraph 3 which stated that Plaintiff "never refused a route."  This is not based on personal knowledge and constitutes improper conclusory opinion testimony.
- Paragraph 4 stating that Defendant "has a huge issue with maintaining black drivers," and "they have a history of firing black drivers who made complaints…"  is a conclusory opinion, a generalized allegation, and outside Seldon's sphere of responsibility.
- Paragraph 7 stating that "Brandon permitted racism to occur at the company and implemented racist rules. Also, management would lie and cover up their wrongdoings" is a conclusory opinion and a generalized allegation. No

---

[101] *Id.*
[102] *Id.* at 767.
[103] *See* Rec. Doc. 12-4, Plaintiff's Depo, p. 113

specific facts are provided as to what "lies" were told and what was "covered up" and how.

- Paragraphs 10-16 are stricken as immaterial. These statements involve workplace safety and are not connected to race in any way.
- Paragraph 17 states that Antonio Early quit working for Defendant "because he was tired of the mistreatment and things that African Americans had to go through," but he "later came back to Brandon, and he was given a management position." Seldon is not competent to testify to another co-worker's state of mind. It is speculative, conclusory, and further contradicted by Early's Declaration.[104] Only Early is competent to testify as to his state of mind and personal experiences with Defendant.

### C. Ira Boatner's Declaration

Applying the law set forth above, the following Declaration statements by Rico Seldon are stricken:

- Paragraph 4 stating that Defendant has provided "an unsafe environment against both work and public policy," has discriminated against African Americans by subjecting them to the unsafe environment, ignoring complaints of safety and racial abuse," and has "permitted racist behavior towards the African American drivers" constitute conclusory opinions and generalized allegations.
- Paragraphs 5 and 6 are immaterial as they relate to workplace safety and a non-race-based legal action brought by Boatner against Defendant.
- Paragraphs 12, 13, 14, 16, and 17, each of which state that certain generalized allegations are "act[s] of racial discrimination," are improper legal conclusions that Boatner is not competent to make.

## III.   LAW & ANALYSIS

### A. Summary Judgment

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[105] This determination is made "in the light most favorable to the opposing party."[106] A party moving for summary judgment "'must "demonstrate the

---

[104] *See* Rec. Doc. 12-13, Early Declaration.
[105] FED. R. CIV. P. 56(a).
[106] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[107] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[108] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[109]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[110] All reasonable factual inferences are drawn in favor of the nonmoving party.[111] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[112] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"[113]

---

[107] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

[108] *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[109] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).

[110] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[111] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[112] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[113] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

### B.  Title VII Race Discrimination

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's race.[114] Illegal discrimination is not the same as simple unfair treatment; indeed, "it has long been the law in this circuit that Title VII ... do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus."[115] Moreover, "[m]anagement does not have to make proper decisions, only non-discriminatory ones,"[116] and Title VII is not a vehicle for judicial second-guessing of business decisions[117] because courts do not determine the validity of an employer's good faith belief about an employee's competence.  Thus, the issue is not whether Defendant treated Plaintiff fairly or whether Defendant's decision was correct or erroneous; rather, the only issue is whether Defendant's decision was racially motivated.

A plaintiff must present proof of a discriminatory motive.[118] A plaintiff may prove discriminatory motive through either direct or circumstantial evidence.[119] Direct evidence is a "statement or written document showing [the employer's] discriminatory motive on its

---

[114] 42 U.S.C. § 2000e-2(a)(1).

[115] *Nieto v. L&H Packing Co.*, 108 F.3d 621, (5th Cir. 1997) (citing *Turner v. Tex. Instruments, Inc.*, 555 F.2d 1251, 1257 (5th Cir. 1977), *overruled on other grounds by Burdine v. Tex. Dept. of Cmty. Affairs*, 647 F.2d 513 (5th Cir. 1981)).

[116] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).

[117] *Bell v. Bank of Am.*, 171 F. App'x 442, 445 (5th Cir. 2006) (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)); *see also Armendariz*, 58 F.3d at 151 n.7 (5th Cir. 1995) (holding that establishing the employer's reason as misguided is insufficient; rather "the employee at all times has the burden of proving ... that those reasons were a pretext for unlawful discrimination").

[118] *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citation omitted).

[119] *Id*. (citing *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994)).

face."[120] The evidence must be direct and unambiguous, allowing for a conclusion without any inferences or presumptions that an impermissible factor motivated the decision.[121] Vague terms are insufficient to plausibly plead discriminatory intent.[122] Further, a plaintiff's subjective belief that a vague term is discriminatory, no matter how genuine the belief, cannot provide the basis for relief.[123]

To prove race discrimination under Title VII, a plaintiff must establish that he is (1) "a member of a protected class" (2) "was qualified for the position" (3) "was subjected to an adverse employment action"; and (4) he was replaced by someone outside the protected class or a similarly situated co-worker outside the protected class was treated more favorably.[124] If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse actions taken. [125] If the defendant satisfies this burden of production, the burden shifts back to the plaintiff, who must "offer sufficient evidence to create a genuine issue of

---

[120] *Portis*, 34 F.3d at 329; *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) ("Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.").

[121] *Moss v. BMC Software, Inc.* 610 F.3d 917, 929 (5th Cir. 2010) (internal quotations omitted) (citing EEOC, 100 F.3d at 1181).

[122] *See, e.g., Burrell v. Lab. Ready, Inc.*, No. 09-227, 2012 WL 1565360, at *5 n.13 (M.D. La. Mar. 30, 2012), (stating that the phrase "you people" is not indicative of racial animus and plaintiff's subjective belief otherwise is insufficient), *R.&R. adopted*, No. 09-227, 2012 WL 1565620 (M.D. La. Apr. 30, 2012); *Stone v. Par. of E. Baton Rouge*, No. 06-401, 2008 WL 4534374, *7 (M.D. La. Sept. 30, 2008) (holding that that there is nothing directly or indirectly race-based about the words "you people"), *aff'd* 329 F. App'x 542 (5th Cir. 2009); *Maldonado v. FirstService Residential, Inc.*, No. 20--1484, 2021 WL 2517542, at *7 (S.D. Tex. June 18, 2021) (citation omitted) (finding the phrases "those people" and "these people" were insufficient to state a § 1981 claim); *Badaiki v. Schlumberger Holdings Corp.*, No. 4:20-CV-2216, 2021 WL 6010580, at *6 (S.D. Tex. Aug. 23, 2021) (citations omitted), *R.&R. adopted*, 2021 WL 5542144 (S.D. Tex. Nov. 26, 2021), *R.&R. adopted*, 2021 WL 5769276 (S.D. Tex. Dec. 6, 2021); *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 549 (S.D. Tex. 2016) (citation omitted); *see also Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 420 (5th Cir. 2009) (finding vague comments insufficient to establish discrimination).

[123] *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (citing *Little v. Republic Refining Co.*, Ltd., 924 F.2d 93, 96 (5th Cir. 1991)).

[124] *Saketoo v. Tulane Univ. School of Medicine*, 510 F.Supp.3d 376, 386 (E.D. La. 2020)(citing *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009))).

[125] *Lee*, 574 F.3d at 259.

material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).'"[126]  Plaintiff proceeds under a pretext theory.

At the pretext stage, the issue is not whether the employer's reason was "correct or fair, but whether the decisionmakers honestly believed the [stated] reason."[127] Plaintiff must create an issue regarding whether "the employer honestly believes in the reasons it offers, not whether [the employer] made a bad decision."[128] Title VII does not permit courts to sit as a super-personnel department that reexamines an entity's business decisions or the wisdom of those decisions, only to address whether those decisions are discriminatory.[129] Courts are not to weigh the wisdom of particular employment decisions nor question every management decision and work assignment; rather, the singular issue is whether the employer's decision was motivated by discrimination.[130]

If an employer satisfies its burden of production by articulating a legitimate, nondiscriminatory reason for its decision, the presumption of discrimination "simply drops out of the picture," and the plaintiff must prove that the defendant intentionally

---

[126] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citing same in the context of a Title VII race discrimination case).

[127] *Harville v. City of Houston*, 945 F.3d 870, 877 (5th Cir. 2019)(citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("The issue at the pretext stage is whether Appellee's reason, even if incorrect, was the real reason for Appellant's termination.")); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (citation omitted).

[128] *Harris v. Double G. Coatings, Inc.*, No. 96-60485, 1997 WL 255619, at *2 n.4, *7 (5th Cir. 1997) (citations omitted).

[129] *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 212 (5th Cir. 2018) (citations omitted); *Harris v. Double G. Coatings, Inc.*, No. 96-60485, 1997 WL 255619, at *2 n.4 (5th Cir. 1997) (citing *Ruby v. Springfield R-12 Public School Dist.*, 76 F.3d 909, 912 n.7 (8th Cir. 1996)).

[130] *See McVille v. Inter-Cmty. Healthcare, Inc.*, 460 F. App'x 353, 355 (5th Cir. 2012) (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Deines v. Tex. Dep't of Protective & Reg. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)).

discriminated against the plaintiff because of a protected characteristic.[131] A plaintiff satisfies this burden by establishing pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence,[132] *i.e.*, that the employer's articulated reasons were not its true reasons but a pretext for discrimination.[133] A plaintiff's prima facie case, "combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[134] "Even in the face of sufficient evidence for a reasonable factfinder to find pretext and reject the nondiscriminatory reason, if no rational factfinder could conclude that the action was discriminatory, such as when the record conclusively reveals some other, nondiscriminatory reason for the decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination occurred, summary judgment will be proper."[135]

It is undisputed that Plaintiff has satisfied the first three prongs of his prima facie case. The parties dispute whether Plaintiff has presented summary judgment evidence to satisfy the fourth prong, which requires Plaintiff to demonstrate that he was replaced by someone outside the protected class or that other similarly situated employees outside Plaintiff's protected class were treated more favorably. Defendant has presented

---

[131] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993) (citations omitted).

[132] *Harville*, 945 F.3d at 879 (citation omitted).

[133] *Goudeau*, 793 F.3d 470, 476 (5th Cir. 2015) (citing *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000))).

[134] *Reeves*, 530 U.S. at 148; *Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 319 (5th Cir. 2020) (citation omitted); *see also St. Mary's Honor Ctr.*, 509 U.S. at 511.

[135] *Douglas v. St. John Baptist Parish Library Board of Control*, No. 21-599, 2022 WL 898746 at *12 (E.D. La. Mar. 28, 2022)(citing *Harville*, 945 F.3d at 876-77(citation omitted)).

uncontroverted evidence that Plaintiff was replaced by a African American driver, and one month later, Barnes was also replaced by an African American driver.[136]  Thus, the Court must determine if Plaintiff has established that he was treated less favorably than a similarly situated comparator.

### 1.  Similarly Situated Comparators

The law is clear that, "[i]n the context of a race discrimination claim, where the plaintiff alleges that employees who were not members of the protected class received more [favorable treatment], the plaintiff must come forward with **specific evidence** of comparators who were similarly situated."[137]  Courts within the Fifth Circuit define "similarly situated" narrowly.[138]  In evaluating whether an alleged comparator is similarly situated,

> "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor [,] or had their employment status determined by the same person[.]"[139] "Employees with different supervisors, who work for different divisions of a company ... generally will not be deemed similarly situated." The Fifth Circuit has further explained, that "employees who have different work responsibilities ... are not similarly situated."[140]

Additionally, a proper comparator is one that shares with a plaintiff "essentially comparable violation histories."[141]

---

[136] Rec. Doc. 12-1, Scichowski Declaration, ¶¶ 19-20.
[137] *Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt*, 816 F.Supp.2d 297, 316 (M.D. La. 2011)(citing *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009))(emphasis added).
[138] *See Horton v. G4S Secure Solutions (USA), Inc.*, No. 16-544-SDD-EWD, 2018 WL 1997535 at *5 (M.D. La Apr. 27, 2018)(citing *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F.Supp.2d 581, 593 (S.D. Tex. 2012; *see also Lopez v. Kempthorne,* 684 F. Supp. 2d 827, 856-57 (S.D. Tex. 2010)).
[139] *Id.* (quoting *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012)(quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009))).
[140] *Id.* (quoting *Lee*, 574 F.3d at 259 (citing *Wyvill v. United Cos. Life Ins.*, 212 F.3d 296, 302 (5th Cir. 2000)).
[141] *Lee*, 574 F.3d at 260 (citations and footnotes omitted).

Defendant maintains Plaintiff has failed to present summary judgment evidence that a similarly situated white driver refused a route but was not terminated. Plaintiff responds, arguing that he has identified Barnes, a white driver, as a similarly situated employee who was treated more favorably than Plaintiff (and other African American drivers) because he was catered to, assigned a trailer in good condition, African American drivers were required to assist Barnes in adjusting his truck, and African American drivers were assigned unsafe trailers.  Plaintiff also contends Barnes' complaints were taken seriously, while the workplace safety and racial discrimination complaints of Plaintiff (and other African American drivers) were dismissed.  Finally, Plaintiff maintains that Barnes was not fired after the October 8, 2021 incident where he publicly exposed himself, urinated all over the truck, approached Plaintiff aggressively, and made racially offensive comments.[142]

Defendant counters, arguing that Plaintiff's offered evidence does not meet the standard of demonstrating a comparator in "nearly identical circumstances."  Despite complaints of Barnes' conduct, Plaintiff has failed to present evidence that Barnes refused to run a route but was not terminated.

Plaintiff responds, arguing that Plaintiff "did in fact identify a true comparator in his 'Memorandum in Opposition', based on the actual definition of *Prima Facie*."[143]  Plaintiff maintains that he never refused to run a route; thus, a similar comparator is not one who refused to run a route because Plaintiff rejects that narrative. However, this is not the law.

First, Plaintiff's claim that he did not refuse to run his route is semantic hair-splitting

---

[142] Rec. Doc. 18-2, Scott Declaration, ¶¶ 8-10, 13, 17, 19, 24, 27, 29; Rec. Doc. 18-8, Boatner Declaration, ¶¶ 7, 9; Rec. Doc. 18-9, Seldon Declaration, ¶¶ 10, 12-13.
[143] Rec. Doc. 26, pp. 6-7.

and disingenuous based on his own sworn testimony.  During his deposition, Plaintiff was presented with the Termination Memo prepared by Scichowski.  He was asked about Scichowski's note that Plaintiff: "Stated he does not feel comfortable driving truck share with another driver.  Refused to run his route."[144]  Plaintiff was asked:

> Q:  Okay.  And that's all true; correct?
> A:  **Yes**, but I didn't feel comfortable because he urinated all over the truck - -
> Q:  Okay.
> A:  - - and it wasn't properly sanitized.
> Q:  Okay.  And - - did you tell Mike that Friday before that you weren't going to drive the truck that day; correct?
> A:  Until it was properly sanitized.  I never refused the route.  I just said that I would like the truck to be properly sanitized.[145]

Scichowski noted that "there was another truck on site but Tevin does not know how to drive a manual transmission."[146] Plaintiff did not controvert this evidence, and admitted that he was not qualified to drive a manual transmission.[147]  The Court rejects Plaintiff's game of semantics regarding his refusal to drive the route.  While it is clear Scichowski did not sanitize the truck to Plaintiff's satisfaction, Plaintiff refused to drive his route.  Once Scichowski cleaned the truck and offered it to Plaintiff, Plaintiff options were then to drive his route or go home. Plaintiff did not get in the truck and drive his route; his justification, whether reasonable or not, does not change this fact.

Next, Plaintiff's purported interpretation of satisfying his prima facie case turns a wealth of jurisprudence on its head.  While Plaintiff is free to argue that the given reason for termination – refusal to run a route – is pretext for discrimination, he cannot skip over

---

[144] Rec. Doc. 12-4, Scott Depo, p. 93; Rec. Doc. 12-3.
[145] Rec. Doc. 12-4, Scott Depo, p. 93:18-25 through p. 94:1-3.
[146] Rec. Doc. 12-3.
[147] Rec. Doc. 12-4, Scott Depo, p. 96.

the requirement of meeting the prima facie case as explained by the Fifth Circuit. In describing "nearly identical circumstances," the Fifth Circuit has instructed that, "critically, the plaintiff's *conduct* that drew the adverse employment decision must have been 'nearly identical' *to that of the proffered comparator* who allegedly drew dissimilar employment decisions."[148]   The bottom line is that Plaintiff had a route to drive on October 8, 2021, and he chose, whether reasonably or otherwise, not to drive it with the only truck he was qualified to drive.  Plaintiff has failed to point to a similarly situated comparator outside his protected class who committed this conduct in the same context and was not terminated.[149] Accordingly, Plaintiff has failed to satisfy the fourth prong of his prima facie case of discrimination.

### 2. Same Actor Inference

Defendant also raised the "same actor" inference.  "[T]he 'same actor' inference creates a rebuttable presumption that an adverse action imposed on a plaintiff was not the result of unlawful discrimination when the same person both hires and fires, or imposes some other adverse action, on the plaintiff."[150] "[T]he inference is stronger when (1) there is close temporal proximity between the favorable employment action and the adverse action, and (2) the decision maker is in the same protected category as the

---

[148] *Hardison v. Skinner*, No. 20-30643, 2022 WL 2668514 at *3 (5th Cir. July 11, 2022)(quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)(emphasis added)(citing *Perez v. Tex. Dep't of Crim. Just.*, 395 F.3d 206, 213 (5th Cir. 2004))).

[149] Plaintiff testified that Seldon may have refused a route at some unspecific time (Rec. Doc. 12-4, Plaintiff's Depo, p. 120); however, Seldon is also African-American, and this evidence is too vague and speculative to constitute competent summary judgment evidence on this issue.

[150] *Williams v. Louisiana*, No. CV 14-00154-BAJ-RLB, 2015 WL 5318945, at *8 (M.D. La. Sept. 11, 2015) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir.1996) (abrogated in part on other grounds, *Russell v. McKinney Hosp. Venture,* 235 F.3d 219 (5th Cir.2000)); *Trevino v. City of Fort Worth*, No. 4:12–CV–717–A, 2013 WL 4516643, at *7 (N.D.Tex. Aug. 23, 2013).

plaintiff."[151]

Given that Scichowski hired Plaintiff *twice* and then terminated Plaintiff, the Court finds that the "same actor" inference applies. It is also relevant that Scichowski replaced both Plaintiff and Barnes with African American drivers, and record evidence regarding the ethnic makeup of Defendant's staff suggests that Scichowski has no problem hiring African American employees.  Even so, the Fifth Circuit has "decline[d] to establish a rule that no inference of discrimination could arise under such circumstances."[152] In other words, the "same actor" inference is neither mandatory nor irrebuttable. But, if "the non-moving party has otherwise failed to raise a genuine dispute as to a material fact, the 'same actor' inference simply reinforces [sic] [D]efendant's submission with respect to [Plaintiff's] race discrimination claim."[153]

Plaintiff testified that he could not recall Scichowski ever saying anything racially offensive to him.[154]  Although Scichowski is not in the same protected class as Plaintiff, he re-hired Plaintiff close in time to terminating Plaintiff – February 2021 to October 2021 – which supports application of the inference.  Finally, Plaintiff failed to address or provide any argument against application of the same actor inference.

Accordingly, summary judgment is granted in favor of Defendant on Plaintiff's Title VII race discrimination claim as he has failed to make a prima facie case.[155]

---

[151] *Jones v. Wells Fargo*, No. 17-8712, 2019 WL 4601602, at *12 n.24 (E.D. La. Sept. 23, 2019) (citations omitted).
[152] *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996).
[153] *Jones*, 2019 WL 4601602, at *12.
[154] Rec. Doc. 12-4, Scott Depo, p. 32
[155] Had Plaintiff satisfied his prima facie case, the Defendant's legitimate, nondiscriminatory reason for his discharge is that Plaintiff refused to drive his route. The pretext analysis that the Court would conduct here is set forth *infra*. in addressing Plaintiff's retaliation claim.

## C. Title VII Hostile Work Environment

Title VII also makes it unlawful for employers to require "people to work in a discriminatorily hostile or abusive environment."[156] "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"[157]

A race-based harassment/hostile-work environment claim requires that a plaintiff establish a prima facie case that (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based upon his race; (4) the harassment affected a term or condition of her employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action.[158] For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment."[159] To meet this standard, the conduct complained of must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[160]

Critically, Title VII is not a 'general civility code.'"[161] "Simple teasing, offhand

---

[156] *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432–33 (5th Cir. 2022) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993))).

[157] *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 106 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1))).

[158] *West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020) (per curiam) (citation omitted).

[159] *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir.2005) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

[160] *Aryain v. Wal–Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir.2008); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

[161] *Heath v. Southern University System Foundation*, 2017 WL 2972909 at *5 (quoting *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)) (explaining that the elements of a hostile work environment claim "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"); *Clark v. S. Broward Hosp. Dist.*, 601 Fed.Appx. 886, 900 (11th Cir. 2015)

comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[162] Under federal law, the mere utterance of ethnic or racial epithets that engender offensive feelings in an employee, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms, conditions, and privileges of employment.[163] The Court looks to the totality of the circumstances, considering "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance."[164] Generally, poor performance evaluations, "write-ups," and work criticism, even if unjust and unfair and in front of peers, do not rise to the level of a hostile work environment.[165]

Plaintiff contends he was subjected to a racially hostile work environment based on the following: Plaintiff attests that Barnes was "known for his racist and inappropriate behavior," stating that Barnes attacked Plaintiff and other African American drivers "on multiple occasions without provocation";[166] Barnes used profanity against Plaintiff and the other African American drivers and often called them "boy" and the n-word;[167] the comment Barnes made to Plaintiff after his infant son passed that "[y]ou're a young

---

[162] *Faragher*, 524 U.S. at 788 (internal quotation marks and citation omitted).

(quoting *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006)) ("Title VII is not a 'general civility code' and does not make 'ordinary [workplace] tribulations' actionable, so not all objectionable language and conduct will support a Title VII harassment claim.") (alteration in original ); *Reine v. Honeywell Int'l Inc.*, 362 Fed.Appx. 395, 397–98 (5th Cir. 2010) ("This high standard for judging hostility is specifically intended to prevent Title VII from becoming a 'general civility code' for the workplace.")).

[163] *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007).

[164] *Rodrigue v. PTS Management Group, LLC*, 550 F.Supp.3d 376, 397 (W.D. La. 2021)(quoting *West v. City of Houston, Texas*, 960 F.3d 736, 742 (5th Cir. 2020); *Harvill*, 433 F.3d at 435).

[165] *See Kang v. Bd. of Supervisors*, 75 Fed.Appx. 974, 975–76, 977 (5th Cir.2003).

[166] Rec. Doc. 18-2, Scott Declaration, ¶ 27.

[167] *Id.*

African American man, you can just make more of them;"[168] and the October 8, 2021 incident when Barnes urinated outside the truck and said "F*** you, boy" to Plaintiff.[169]

Plaintiff also maintains that Scichowski's management of the situation contributed to the hostile work environment in the following ways: Barnes' offensive conduct was routinely reported to Scichowski with no discipline or termination to follow; Scichowski required Plaintiff and the other African American drivers to "cater" to Barnes by adjusting his truck equipment when he returned from a route; Scichowski took seriously Barnes' complaints about truck adjustments while Scichowski did not take seriously complaints by African American drivers about Barnes' racist behavior, general abuse, or safety issues;[170] Barnes was provided well-maintained trucks, trailers, and equipment while Plaintiff and other African American drivers were given substandard equipment they believed to be dangerous;[171] and Scichowski did not provide proper safety equipment to African American drivers.[172]

Defendant moves for summary judgment on Plaintiff's hostile work environment claim, arguing that Plaintiff fails to establish a prima facie case of racial harassment/hostile work environment. Defendant claims Plaintiff only recalled two direct instances of racial comments by Barnes – the comment made after his son died, and the "F*** you, boy" on October 8, 2021.  The time span between these two instances was eight months.  When Plaintiff was asked in his deposition if he remembered any other instances that Barnes used a racial epithet towards him aside from these, Plaintiff

---

[168] *Id.* at ¶ 28.
[169] *Id.* at ¶ 29.
[170] *Id.* at ¶ 25.
[171] *Id.* at ¶¶ 19, 24.
[172] *Id.* at ¶ 22.

testified: "Not that I can recall, no."[173]  When asked how often Barnes used the term "boy" and under what circumstances, Plaintiff responded: "Every time he was upset.  A lot of stuff, I tried to just I guess you could say mute out, blank out, and try to keep working … like every time he got upset, he'll – or just – I don't know what.  He just – that's just how he'll be talking to us."[174]  Plaintiff testified that Barnes was "a very angry person" and that he used the term boy "a lot," but Plaintiff could not give a number.[175]

Plaintiff argues that he has presented sufficient evidence of a racially hostile work environment.  Plaintiff points to his deposition testimony that Barnes always referred to him and other African American employees as "boys, and he just said 'N' words to people. The whole time, he was saying things that were racist, and I reported it, and nothing happened."[176]  When pressed how many times Barnes said the n-word, Plaintiff responded "I don't know exactly, but he – he used it."[177] Plaintiff contends the evidence and testimony presented in opposition to Defendant's summary judgment establishes a prima facie case for his hostile work environment claim.

Before turning to the prima facie elements for this claim, the Court must address Defendant's challenge to Plaintiff's "me too" evidence.  Defendant claims the evidence of alleged harassment suffered by Plaintiff's co-workers is the type of "me too" evidence courts do not consider in evaluating a hostile work environment claim.  In *Celestine v. Petroleos de Venezuela SA.*,[178] the plaintiff relied upon the racial harassment claims heard by others to support his hostile work environment claim.[179]  The Fifth Circuit

---

[173] Rec. Doc. 12-4, Scott Depo, p. 50.
[174] *Id.*
[175] *Id.* at pp. 50-51.
[176] Rec. Doc. 26-1, Scott Depo, p. 49.
[177] *Id.*
[178] 108 Fed. Appx. 180 (5th Cir. 2004).
[179] *Id.* at 187-88.

classified the racial harassment heard by other employees as "hearsay; things that other employees told him[.]"[180]    The Fifth Circuit upheld the district court's dismissal of the plaintiff's hostile work environment claims in *Celestine* because, as the "[plaintiff] established *no* act adverse *to him* []], he could not establish a hostile work environment claim."[181] This was also the holding *Saketkoo v. Tulane University School of Medicine*, wherein the Eastern District of Louisiana noted that "the Fifth Circuit has found conduct that a plaintiff 'did not personally experience' insufficient to render the plaintiff's own experience severe or pervasive."[182]

However, in *Hernandez v. Yellow Transportation Incorporated*, the Fifth Circuit shifted away from this bright line rule.[183] *Hernandez* involved claims brought by three separate plaintiffs under Title VII for hostile work environment and retaliation based on race.[184] Specifically, the case involved one Mexican American plaintiff who brought claims for both hostile work environment and retaliation, one Mexican American plaintiff who brought only a claim for hostile work environment, and one white plaintiff who brought claims for hostile work environment and retaliation.[185] On appeal, the Fifth Circuit considered whether the district court had wrongfully excluded plaintiffs' proffered evidence regarding harassment directed at other Hispanics and African Americans.[186] The district court held that to establish a hostile work environment claim, the plaintiff must

---

[180] *Id*. at 187.
[181] *Id*. at 188 (original emphasis).
[182] 510 F.Supp.3d 376, 401 (E.D. La. 2020)( quoting *Septimus v. University of Houston*, 399 F.3d 601, 612 (5th Cir. 2005); *see Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 652 (5th Cir. 2012) (questioning whether *Septimus* dictates "that evidence regarding other workers is never relevant" but concluding that it mandates at least that the "harassment must have affected a term, condition, or privilege of the victim's employment" (quotations omitted and emphasis added))).
[183] 670 F.3d 644, 653-54 (5th Cir. 2012).
[184] *Id*. at 649.
[185] *Id*.
[186] *Id*. at 652.

personally experience racial harassment, and instances involving other employees were therefore irrelevant.[187]

In reviewing that decision, the Fifth Circuit cautioned against the proposition that evidence regarding other workers could never be relevant in a hostile work environment claim and explicitly noted that in *Shattuck v. Kinetic Concepts*, the Fifth Circuit held that evidence of discrimination against other members of a plaintiff's protected class was admissible in a discrimination claim.[188] The plaintiff in *Shattuck* succeeded on a failure to promote age discrimination claim, and on review, the Fifth Circuit held, "[t]here is no proscription of evidence of discrimination against other members of the plaintiff's protected class; to the contrary, such evidence may be highly probative, depending on the circumstances."[189]

Nevertheless, the Fifth Circuit, in 2023, and numerous courts within the circuit have held that "'second-hand' harassment," although relevant, is "less objectionable than harassment directed at the plaintiff."[190] The Court interprets the Fifth Circuit jurisprudence on this issue to indicate that it is proper for the Court to consider second-hand co-worker harassment in a Title VII hostile work environment claim, but claims of non-party second-hand harassment will not save a plaintiff with an otherwise weak case.[191] With this in

---

[187] *Id.*
[188] *Id.* (citing *Shattuck*, 49 F.3d 1106, 1109 (5th Cir. 1995)).
[189] *Shattuck*, 49 F.3d at 1109-10.
[190] *Arredondo v. Elwood Staffing Services, Inc.*, 81 F.4th 419, 433 (5th Cir. 2023)(quoting *Johnson v. TCB Const. Co., Inc.*, 334 F. App'x 666, 671 (quoting *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005))); *see also Jordan v. Downtown Development District*, No. 2:21-CV-01323, 2023 WL 9423241, at *3 (citation omitted); *Weber v. Leson Chevrolet Company, Inc.*, No. 22-00910, 2024 WL 4024774, at *3 (E.D. La. Sept. 3, 2024)(citations omitted); *Boutin v. Exxon Mobil Corp.*, 730 F.Supp.2d 660, 671 (S.D. Tex. 2010)(citations omitted); *Sacks v. Texas Southern University*, No. H-18-3563, 2021 WL 4150883, at *7 (S.D. Tex. Jan. 25, 2021)(citations omitted).
[191] *See e.g.*, *Brown v. Valvoline, LLC*, No. 4:22-cv-04059, 2024 WL 990056 at *4, n. 1 (S.D. Tex. Mar. 7, 2024)("Given that comments directed at other employees constitute the totality of the racially motivated harassment allegations against Motz, the Court finds that this is insufficient to state a plausible claim for relief against Motz under *Twombly*, 550 U.S. at 544, 127 S.Ct. 1955.").

mind, and subject to the Court's evidentiary rulings above, the Court will consider evidence of second-hand harassment by Plaintiff's co-worker under the totality of the circumstances.

Turning to the prima facie elements of a hostile work environment claim, Plaintiff has satisfied the first two elements:  he is a member of a protected class, and he was subjected to unwelcome harassment.  However, Plaintiff has failed to present sufficient summary judgment evidence to establish elements three and four.

      1.  <u>Harassment Based on Race</u>

While Plaintiff has presented some evidence of racially insensitive comments and the use of the n-word by Barnes, a great deal of conduct subjectively perceived by Plaintiff to be race-based finds no support in the record or in jurisprudence. A mere difference in race, "[w]ithout more, ... does not support a finding that [plaintiff] suffered race ...-based harassment."[192]

      *a.  Use of the Term "Boy"*

Plaintiff has presented evidence that Barnes often used the term "boy" when talking to him and other African American drivers. While the use of the term "boy" in certain contexts may constitute a racial epithet, Plaintiff has not presented evidence to establish that is the case here. While the Fifth Circuit has recognized that even the single use of a racial epithet may support a hostile work environment claim when that incident is sufficiently severe under the totality of the circumstances test, the term "boy" is not an unambiguous racial epithet as is the N-word.[193]  In *Chambliss v. Entergy Corporation*, the

---

[192] *Byrnes v. City of Hattiesburg*, 662 Fed.Appx. 288, 290-91 (5th Cir. 2016) (citing *Hernandez*, 670 F.3d at 652).

[193] *Ash v. Tyson Foods, Inc*., 546 U.S. 454, 456 (2006) (noting that the word "boy" may not always be benign depending on "context, inflection, tone of voice, local custom, and historical usage"); *see also, e.g.,*

court noted that, while the plaintiff in that case "may have subjectively felt the term reflected discriminatory animus, it is not an objectively race-based statement," and the "use of the term 'boy' … is an ambiguous term that may be derogatory in certain contexts and race-neutral in others."[194]

Further problematic for Plaintiff, Defendant presented uncontroverted summary judgment evidence that Barnes called all co-workers "boy," whether white or African American.  Lloyd Prater, who is African American, and was Defendant's Warehouse Manager for over twenty years – including the time of Plaintiff's employment – attested that he worked with Barnes for approximately seven years, and during that time, he heard Barnes refer to both white and African American employees as "boy."[195]  Prater's successor as Warehouse Manager, Antonio Early, who is also African American, also attested that he worked with Barnes for seven years, and he also heard Barnes call both white and African American employees "boy."[196]  In *Simmons v. Triton Elevator, LLC*, the court addressed a case involving similar claims.[197]  The African American plaintiff in *Simmons* presented evidence that several white co-workers routinely referred to him as "boy" and "brother."[198]  However, there was also evidence that these terms were not used exclusively in reference to the plaintiff, or even to persons of color, and the Court rejected Plaintiff's hostile work environment claim finding, in part, that the use of the term "boy"

---

*Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F. App'x 104, 107 (5th Cir. 2009) (three comments, including two involving the use of the word "boy," did not "rise to the level of severity or pervasiveness required to show a hostile work environment"); *Collier v. Dallas Cnty. Hosp. Dist.*, 827 F. App'x 373 (5th Cir. 2020) (noting that, though disturbing, two instances of racial graffiti and being called "boy" are insufficient to establish a hostile work environment under Fifth Circuit precedent).

[194] No. 22-2488 DIV.2 CONMAG, 2023 WL 7114669, at *13 (E.D. La. Oct. 27, 2023).
[195] Rec. Doc. 12-12, Prater Declaration, ¶¶ 2, 3, 5.
[196] Rec. Doc. 12-13, Early Declaration, ¶¶ 2, 3, 4, 5.
[197] 557 F.Supp.3d 767 (N.D. Tex. 2021).
[198] *Id.* at 778.

was neither race-based under the circumstances nor severe or pervasive.[199] Thus, the Court finds that Barnes' use of the term "boy," was not a race-based term as used in this context.

### b.  Unspecified "Microaggressions"

Plaintiff also testified that he and other African American employees were subjected to unspecified microaggressions.  When asked in his deposition what Plaintiff meant by his statement that he suffered "other microaggressions" by Barnes, Plaintiff testified "[j]ust like after he urinated and the way he said, 'F you, boy.'"[200] This is the only "microaggression" that Plaintiff identified and explained.

There is scant caselaw on the legal definition of microaggression, which is understandable as it is a relatively new term in American culture.  The few courts addressing this term have either adopted a party's definition or simply applied the Merriam-Webster Dictionary definition.  The Court will use the dictionary definition for purposes of this motion. Merriam-Webster defines microaggression as "a comment or action that subtly and often unconsciously or unintentionally expresses a prejudiced attitude toward a member of a marginalized group (such as a racial minority)."  By its very definition, a microaggression may be subjectively perceived as race-based but is not necessarily race-based or ill-intentioned by the alleged aggressor.  Without further explanation about the purported microaggressions Barnes committed against Plaintiff, the one microaggression identified is not overtly race-based, particularly considering the Court's findings above about Barnes' use of the term "boy."  Further, the general

---

[199] *Id.*
[200] Rec. Doc. 12-4, Plaintiff Depo at pp. 114-115.

accusation of "microagressions" is the type of non-specific, vague evidence insufficient to establish a hostile work environment claim.

### c. General Allegations of Racism and Barnes' Hostility

Plaintiff testified that Barnes was generally "an angry person," who regularly used profanity and provoked fights with co-workers. Plaintiff attributes this general hostility and every single altercation involving Barnes to racism. "However, hostile work environment jurisprudence 'does not prohibit all verbal or physical harassment in the workplace.'"[201] Plaintiff fails to provide sufficient *specific* evidence required to escape summary judgment. As discussed above, "the non-moving party must show that summary judgment is inappropriate by setting 'forth *specific facts* showing the existence of a genuine issue concerning every essential component of its case.'"[202] "The party opposing the summary judgment is required to identify *specific evidence* in the record and to articulate *precisely* how this evidence supports his claim."[203] The Plaintiff has identified only two specific instances of purported racial harassment by Barnes: the comment made after Plaintiff's son passed away and the "F--- you Boy" during the urination incident. All other allegations of Barnes' purported abuse of Plaintiff and other African American co-workers is general and not specific or precise.  For example, Plaintiff admits Barnes never used the n-word towards him but claims he used it "a lot."  Despite alleging its use "a lot" and "the whole time," when asked who Plaintiff witnessed Barnes use the n-word towards, he testified: "[t]he other drivers, like him and Rico [Seldon], they – and he had an incident with Ira."

---

[201] *Arredondo v. Schlumberger Ltd.*, 583 F.Supp.3d 783, 803 (W.D. Tex. 2022)(quoting *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 443 (5th Cir. 2011) (citation omitted)).
[202] *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998))(emphasis added).
[203] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(emphasis added).

This was the only specific time Plaintiff claims he heard Barnes use the n-word. In his Declaration, Plaintiff attests generally that:

> Richard Barnes was known for his racist and inappropriate behavior. Richard Barnes has attacked me and the other African American drivers on multiple occasions without provocation. Richard Barnes would use profanity towards me and the other African American drivers and referred to us as "boy" or the n-word. Barnes was always angry, and he took this anger out on me and the other African American drivers. Brandon did not terminate Barnes for these ongoing racist acts.[204]

This statement is rife with generalities. It also refers to several actions that are not inherently race-based, like the use of profanity, the term "boy," or Barnes being a generally angry person. The "attacks" are not specified as verbal or physical, and the context in which they occurred is not provided. And Plaintiff directly contradicts his deposition testimony that he could not recall Barnes ever directing the n-word at him, attesting in his Declaration that Barnes referred to "us" as "boy" or the n-word.

Ira Boatner's Declaration fares no better. Boatner refers to non-specific racist behavior, racial abuse, microaggressions, and mistreatment of African Americans by Barnes.[205] He attests that Barnes is a "known racist" who "picked unprovoked fights" with African Americans. Boatner attests he witnessed Barnes provoke a physical fight with Seldon, and Boatner "broke it up."[206] Boatner describes the fight as being based on Barnes' complaint that Seldon did not turn off his truck's headlights while Barnes was attempting to park.[207] The only other specific instance Boatner describes is an instance when he did not adjust the truck to Barnes' liking before turning it over, and Barnes

---

[204] Rec. Doc. 18-2, Scott Declaration, ¶ 27.
[205] Rec. Doc. 18-8, Boatner Declaration, ¶¶ 7-8.
[206] *Id.* at ¶ 11.
[207] *Id.*

complained about this to Scichowski. Neither instance contains any reference to evidence that race was a motivating factor.

Seldon's Declaration is equally unhelpful. Seldon describes the truck headlights fight with Barnes but does not give any specifics as to how this incident was racially motivated other than to generally say that Barnes was a "heavy perpetrator of racism."[208] Seldon attests that Barnes "was very mean to me and other African Americans." He would "pick unprovoked fights" and "stare[] in an intimidating way" at African Americans.[209] Seldon describes an incident where a different white driver – not Barnes – called him the n-word, and he claims that this employee was not fired for this.[210] However, Seldon does not describe a single incident when Barnes directed the n-word at him. Moreover, Seldon does not describe specifically or precisely how Barnes' alleged conduct was connected to Seldon's race.

In *Barkley v. Singing River Elec. Power Ass'n*, the Fifth Circuit addressed a claim of racial hostile work environment, holding that "generalized allegations cannot defeat summary judgment."[211] This Court also held in *Adams v. United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefiting Industry of the United States and Canada, AFL-CIO, LOCAL 198* that "[g]eneral allegations that fail to reveal *detailed and precise* facts will not prevent the award of summary judgment."[212] In *Wallace v. Texas Tech University*, the Fifth Circuit affirmed summary judgment in favor of the defendant on the

---

[208] Rec. Doc. 18-9, Seldon Declaration, ¶¶ 8-9.
[209] *Id.* at ¶ 8.
[210] *Id.* at ¶ 5. Defendant disputes this fact and offers sworn testimony that Scichowski terminated this employee before he returned to work the next day and claimed to "quit." *See* Rec. Doc. 22-1, Scichowski Supp Declaration, ¶ 8.
[211] 433 F. App'x 254, 258 (5th Cir. 2011).
[212] 469 F.Supp.3d 615, 626 (M.D. La. 2020)(citing *Walton v. Alexander*, 20 F.3d 1350, 1352 (5th Cir. 1994)(emphasis added).

plaintiff's hostile work environment claim because the plaintiff claimed the harasser "routinely [made] racist remarks;" the court found that "if there were specific evidence of this in the record, such facts may have prevented summary judgment from being rendered against Wallace on this claim," but the court noted specific evidence of these racist remarks was lacking.[213]

In *Hernandez v. Yellow Transp., Inc.*, the Fifth Circuit noted that the district court did not err in finding that one of the key incidents, the plaintiff having been threatened by with a knife by a coworker, was irrelevant because there was no evidence that the event had anything to do with race.[214]  Other evidence was also rejected by the district court because, even if it reflected hostility toward one of the plaintiffs, there was no evidence that the actions were based on race.[215] Indeed, a wide range of conduct may render a workplace uncivil, but a plaintiff must show under Title VII that the conduct was based on race.[216]

For example, in *Keel v. Wal-Mart Stores, Inc.*, the district court, relying on *Hernandez*, rejected as evidence the fact that a co-worker regularly swore at and called the disabled plaintiff a "fat, lazy Motherf****r."[217]  The court noted that there was no evidence that the plaintiff "interpreted this comment to implicate his disability."[218]

In *Byrnes v. City of Hattiesburg*, the Fifth Circuit affirmed summary judgment in favor of an employer in a disability discrimination case.[219] The disabled plaintiff claimed he suffered a hostile work environment based on his race and his disability. The plaintiff

---

[213] 80 F.3d 1042, 1049 (5th Cir. 1996).
[214] 670 F.3d 644, 652 (5th Cir. 2012).
[215] *Id.*
[216] *Id.* (citing Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)).
[217] No. 1:1-cv-248, 2012 WL 3263575, at *15 (E.D. Tex. July 17, 2012).
[218] *Id.*
[219] 662 F. App'x 288 (5th Cir. 2016).

testified that a co-worker threatened to steal his car, wreck his car, threatened the plaintiff's father, blocked the pathway to his office and refused to leave, and on one occasion, put his hands on the plaintiff's chest and pushed him.[220]  The Fifth Circuit affirmed summary judgment against the plaintiff, finding that he "failed to create a genuine issue of material fact that he was harassed because of his race or disability."[221]  This was because the plaintiff admitted that the co-worker did not refer to his race or disability when the harassing conduct occurred.[222]

In *Clark v. City of Alexandria*, the court rejected a race-based hostile work environment claim, finding that many of the plaintiff's allegations did "not bear any relationship to race."[223]  The plaintiff claimed that his supervisor "made intimidating and angry faces" at him; in a group setting the supervisor looked at each person with an angry look; screamed at the plaintiff "in a hostile and demeaning tone" in front of other employees; and the supervisor failed to reprimand other employees who "verbally attacked" the plaintiff.[224]  The court found that there was no evidence that connected these accusations to the plaintiff's race.[225]  The court also rejected evidence of alleged harassment directed at someone other than the plaintiff, stating: "Although 'a plaintiff for some purposes ... [may] introduce evidence of discrimination of others' to support their

---

[220] *Id.* at 289.
[221] *Id.* at 291.
[222] *Id.*
[223] No. 1:20-cv-01581, 2023 WL 5970196, at *9 (W.D. La. Sept. 13, 2023).
[224] *Id.*
[225] *Id.* (citing *Brew v. Weyerhaeuser NR Co.*, 537 F. App'x 309, 313 n.9 (5th Cir. 2013) ("We do not consider incidents of alleged harassment not based on race ... because [plaintiff] has no evidence 'that the non-race-based harassment was part of a pattern of race-based harassment.'"); *Rome-Bienemy v. Children's Hosp.*, 2015 WL 8600689, at *8 (E.D. La. Dec. 14, 2015) ("Title VII does not provide a cause of action for work environments that are simply 'hostile.'") (citing *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012)); *Russell v. Louisiana through Div. of Admin.*, 2006 WL 8432078, at *8 (M.D. La. Oct. 3, 2006) (granting summary judgment where "none of the defendants made derogatory statements to [plaintiff] regarding her race")).

hostile work environment claim, offensive comments that do not target the plaintiff are given limited weight."[226]

In this case, Plaintiff has failed to present evidence that Barnes' anger, hostility, and uncivil behavior towards his co-workers were necessarily race-based. Indeed, this Court has held that a co-worker who "raised his voice to [the plaintiff], was rude, hostile, and nasty" in front of others could not sustain a hostile work environment claim because this conduct was not connected to the plaintiff's race.[227] Crucially, the declarations submitted by Plaintiff, Boatner, and Seldon all lack any *specific* incident when Barnes referred to the declarant as the n-word. The Court does not condone Barnes' purported unprofessional and arguably crude workplace conduct; however, such conduct must be connected specifically, not generally, to the victims' race.  It cannot be assumed that Barnes' hostility was motivated by race simply because those he harassed are of a difference race, or because all other employees in his department were African American. As the Fifth Circuit instructs, a mere difference in race, without more, does not support a finding of race-based harassment.[228]

---

[226] *Id.* (quoting *Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2005) (dismissal appropriate in part because the plaintiff "did not personally experience most (if not all) of the conduct complained of by the other women."); *Collier v. Dallas Cnty. Hosp. Dist.*, 827 F. App'x 373, 378 (5th Cir. 2020) (summary judgment proper in part because inappropriate comments were not directed at the plaintiff; *White v. Gov't Emps. Ins. Co.*, 457 F. App'x 374, 381 (5th Cir. 2012) (dismissal proper in part because "[n]one of [the plaintiff's allegations] involved physically threatening or humiliating conduct ... [and] the [most offensive] comment was not directed at [plaintiff]"); *Edwards v. Louisiana Cmty. & Tech. Coll. Sys.*, 2012 WL 1391662, at *2 (W.D. La. Apr. 20, 2012) (dismissal proper where most of the complained-of statements "were [not] directed at Plaintiff."); *Williams v. KTVE/KARD TV Station*, 2013 WL 1908298, at *4 (W.D. La. May 7, 2013) (summary judgment proper where the alleged "remarks and/or incidents were not directed toward plaintiff."); *but see Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 653 (5th Cir. 2012) (noting that "[w]e have held in the context of sex discrimination that harassment of women other than the plaintiff [can be] relevant to a hostile work environment claim.")).

[227] *Goring v. Board of Sup'rs of Louisiana State University*, 932 F.Supp.2d 642, 653 (M.D. La. 2010).

[228] *See Byrnes*, 662 Fed. Appx. at 290-91.

### d. Workplace Safety Equipment/Violations

Plaintiff contends Defendant committed several workplace safety violations, ignored Plaintiff's and other African American employees' complaints about these safety violations, and provided African American employees faulty equipment.  However, in the declarations submitted by Plaintiff and his co-workers, the attestations about workplace safety violations were stricken by the Court because there is no summary judgment evidence to support the conclusory statement that workplace safety violations and policies only, and intentionally, affected African American employees rather than all employees. There is evidence of purported safety violations in the warehouse, but there is no evidence before the Court to connect these violations to race.  Indeed, it appears that any purported safety violations would affect all employees, regardless of race, who utilized the warehouse.  There is simply no evidence aside from Plaintiff's subjective opinions that these purported violations applied to or allegedly harmed only African American employees rather than all employees regardless of race.

Notably, complaints about the "ordinary tribulations of the workplace"—even if severe—are not actionable unless they are based on a protected characteristic, such as race.[229]  For example, in *Keel*, where plaintiff argued that the employer's failure to provide him working equipment constituted harassment, the court held that the plaintiff "fail[ed] to show how this non-disability and race-based harassment was part of a pattern of disability or race-based harassment."[230]  In *Young v. School Dist. of Philadelphia*, the Fourth Circuit

---

[229] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

[230] *Keel*, 2012 WL 3263575 at *15 (citing *Hernandez*, 670 F.3d at 654 (discussing *E.E.O. C. v. WC & M Enters., Inc.*, 496 F.3d 393 (5th Cir.2007)); *accord Wiltz v. Christus Hosp. St. Mary*, 2011 WL 1576932, at *8 ("Harassment is based on color when the complained-of conduct has a color-related character or purpose.") (emphasis in original)).

similarly held that there was no evidence to support a plaintiff's claim that he was assigned faulty equipment because of his race.[231]

Accordingly, the Court finds that purported workplace safety violations and faulty equipment cannot form the basis of race-based harassment where there is no evidence connecting this conduct to race or demonstrating how such conduct intentionally affected only African American employees. Plaintiff has presented evidence, which Defendant disputes, that Scichowski showed favoritism to Barnes regarding truck adjustments and/or equipment; however, Plaintiff failed to connect this to Barnes' race. Moreover, that Scichowski may have shown favoritism to Barnes is also insufficient to carry Plaintiff's burden. This Court has noted that "[f]avoritism alone is not evidence of Title VII discrimination.[232] Plaintiff subjectively believes such policies and decisions were based on race, but the Court cannot find from the current record that they are objectively based on race.

2.  <u>Severe or Pervasive</u>

Plaintiff must also demonstrate that the race-based harassment suffered was so severe or pervasive as to permeate the workplace and create an abusive and hostile working environment. The Court looks to the totality of the circumstances, considering "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably

---

[231] *Young v. School Dist. of Philadelphia*, 427 F. App'x 150, 154 (3rd Cir. 2011).

[232] *Jackson v. Louisiana Dept of Public Safety and Corr.*, No. 15-00490, 2017 WL 2786493, at *7 n. 87 (M.D. La. June 27, 2017)(citing *Pickens v. CLC of Vaiden, LLC*, Civil Action No. 3:06CV147, 2008 WL 480008, at *3 (N.D. Miss. Feb. 19, 2008)("[T]he mere fact that an employee who was allegedly shown favoritism was white would not support a race discrimination claim, even if such favoritism had been established."); *Williams v. C.J. Gayfers and Co.*, 11 F.Supp.2d 854, 858 (S.D. Miss. 1998)("the fact that an employee of one race is given more favorable treatment than an employee of a different race is no basis for a lawsuit under Title VII unless a plaintiff proceeds further and establishes that racial discrimination was a motivating factor behind the employer's [decision.]").

interferes with an employee's work performance."[233]

### a. Frequency

The Court finds there is insufficient evidence of the frequency of the purported racial harassment. As set forth above, Plaintiff readily admits that, because Barnes drove the night shift and Plaintiff drove the day shift, his interaction with Barnes was between one and two hours per week, which amounts to 25% *at most* and 12.5% at least of an entire work week.[234] This limited interaction undermines the suggestion that Plaintiff's work environment was constantly permeated with racial abuse. Plaintiff cannot accumulate the alleged experiences of other drivers to make a showing of frequency.

After removing workplace safety complaints, which will be discussed below, and Barnes' indiscriminate use of the word "boy," there are few specific incidents before the Court of Barnes' making racially offensive comments or using the n-word. Although Plaintiff and other drivers attested that Barnes used "boy" and the n-word "a lot," there is no way to know from this characterization how often the n-word was purportedly used. The specific instances offered are not of such a frequency as to be pervasive.

### b. Severity

In considering the severity of Title VII harassment, "[t]he Fifth Circuit has required racial insults to be extremely severe to survive summary judgment."[235] This requires "direct racial insults."[236] The Court has discussed at length the lack of evidence as to

---

[233] *Rodrigue v. PTS Management Group, LLC*, 550 F.Supp.3d 376, 397 (W.D. La. 2021)(quoting *West v. City of Houston, Texas*, 960 F.3d 736, 742 (5th Cir. 2020); *Harvill*, 433 F.3d at 435).
[234] Rec. Doc. 12-4, Plaintiff's Depo. p. 32.
[235] *Daywalker v. University of Texas Medical Branch at Galveston*, 641 F.Supp.3d 362, 376 (S.D. Tex. 2022)(citing *e.g., E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007)).
[236] *Id.*

direct racial insults to the Plaintiff. Nevertheless, the Court will consider applicable jurisprudence on this issue.

The Fifth Circuit has affirmed summary judgment of Title VII race-based hostile work environment claims based on more "extreme" conduct than that presented here as insufficiently severe or pervasive. For example, in *Cavalier v. Clearlake Rehabilitation Hosp., Inc.*, the Circuit agreed the African American plaintiff's allegation that he had been repeatedly called "boy" by a supervisor, who also threatened to "beat the tar off of him[,]" did not rise to the level of severity or pervasiveness to be actionable under Title VII.[237] It reached the same conclusion in *Johnson v. TCB Const. Co.*, in which an African American plaintiff's supervisor had directly called him a "damn n*****" on one occasion and regularly used that derogatory epithet in general workplace conversation.[238]

In *Rome-Bienemy v. Children's Hospital*, the plaintiffs were terminated African Americans medical secretaries at a pediatric hospital who claimed race-based discrimination, harassment, and retaliation.[239] As evidence of a hostile work environment, one plaintiff presented evidence that, on one occasion, President Obama was referred to as a monkey and was generally criticized during an office meeting; she testified in a deposition that she had been called the n-word by a co-worker and that she heard other racial slurs being used in the office, but she could not specify or recall what these slurs were; a co-worker made derogatory comments about the way African Americans pronounced words and stated she wished the government would drug test African

---

[237] 306 F. Appx. 104, 105-06 (5th Cir. 2009)(per curiam).
[238] *Johnson v. TCB Const. Co.*, 334 F. App'x. 666, 668, 670 (5th Cir. 2009) (per curium).
[239] No., 14-1020, 2015 WL 8600689, at *1 (E.D. La. Dec. 14, 2015).

Americans on food stamps; the plaintiff claims other "racial" comments were made where other co-workers were called a "redneck from the delta" and "uptown girl."[240]

The court noted that the plaintiff could not recall the day she was called the n-word, and while she claimed she was called another racial slur, she could not recall what it was. The court found that the plaintiff failed to satisfy her prima facie burden for the hostile work environment claim because:

> The specific incidents of racially offensive comments are insufficient as a matter of law to support a Title VII hostile work environment claim. The comments directed at [plaintiff] were isolated incidents that were not sufficiently pervasive over the course of [her] employment to alter the conditions of her employment. Most of the comments that [plaintiff] complains about, even if they were in fact made, while inappropriate and offensive, were not directed at her.[241]

As cited by the Eastern District of Louisiana in *Olmeda v. Cameron Intern. Corp.*, "infrequent comments pale in comparison to far more severe race-based comments that have been found to support hostile work environment claims."[242]

Similarly, in *Johnson v. TCB Constr. Co.*, the Fifth Circuit found there was insufficient evidence to establish a racially hostile work environment where a supervisor's comment that the plaintiff was just "like a damn n****r" was isolated; there was no

---

[240] *Id.* at *8.
[241] *Id.*
[242] 139 F.Supp.3d 816, 831-32 (E.D. La. 2015)(citing *e.g.*, *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir.2000) (holding that plaintiff survives summary judgment where evidence demonstrated years of inflammatory racial epithets, including "nigger" and "little African-American monkey"); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1266 (7th Cir.1991) (finding summary judgment for defendant inappropriate where plaintiff was subjected to "nigger jokes" for a ten-year period and whose workstation was adorned with "a human-sized dummy with a African-American head"); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182 (4th Cir.2001) (reversing summary judgment where plaintiff suffered "incessant racial slurs" including "nigger" and "dumb monkey"); *cf. Pickens v. Shell Tech. Ventures, Inc.*, 118 Fed.Appx. 842, 850 (5th Cir.2004) (unpublished)(holding that a company Christmas party where a skit with characters in African-Americanface was performed and racially insensitive comments were made did not create a hostile work environment); *Mosley v. Marion County, Miss.*, 111 Fed.Appx. 726, 728 (5th Cir.2004) (unpublished)(three incidents involving the use of racial slurs were insufficient to establish a hostile work environment claim).

evidence of the objective effect of that comment on the plaintiffs work performance; and although there was evidence that the supervisor frequently used the term "n****r," those other comments were not uttered in the plaintiffs presence, and there was no evidence that they affected the plaintiff's job.[243]

Contrast these facts to those in *Jones v. Delta Towing LLC*, wherein the court denied summary judgment on the plaintiff's racial hostile work environment claim because he produced evidence that, over a six-month time frame, whenever the plaintiff was in the room, his supervisor and co-workers would use the n-word, and they referred to African American people as "porch monkeys"; the plaintiff's "work productivity was compared to that of a slave"; he was told a story about the drowning death of a African American man while out at sea; and jokes were made about the size of African American men's genitals in his presence.[244]

Considering the foregoing jurisprudence and the specific instances before the Court that could qualify as racially insensitive or offensive conduct by Barnes, the Court finds that the conduct in this case does not rise to the level of severity that the Fifth Circuit has held survives summary judgment. The incidents complained of were not so pervasive as to alter the conditions of Plaintiff's employment.

### c.  Physically Threatening or Humiliating/Mere Offensive Utterance

There is evidence before the Court that Plaintiff felt physically threatened and/or humiliated by Barnes' conduct.  Indeed, Plaintiff has presented testimony that he and/or other African American co-workers felt intimidated by Barnes, that he regularly screamed and cursed at them, provoked fights, and was generally hostile and angry.

---

[243] 334 Fed. Appx. 666, 671 (5th Cir. 2009).
[244] 512 F.Supp.2d 479, 487-88 (E.D. La. 2007).

However, considering the two specific incidents Plaintiff describes with Barnes, the Court finds that the purported racial comments were mere offensive utterances. Barnes' comment to Plaintiff about being a young black man who could "just make more babies," was insensitive and offensive, but as the Court has held above, calling Plaintiff "boy" during the urine incident, while offensive to Plaintiff, was not necessarily based on race. Even construing the exchanges between Plaintiff and Barnes during the urine incident as racially charged, they would still constitute isolated offensive utterances.

### d. Interference with Work Performance

The Fifth Circuit in *Barkley* also affirmed summary judgment on the plaintiff's hostile work environment claim based on the plaintiff's admission that the alleged harassment did not affect his work performance, considering the plaintiff "testified that the harassment had no impact on his work performance."[245]  The plaintiff testified: "With me, you hear it, you just go about your business. I'm not one of those people who get upset when they hear whatever, whatever."[246] The court noted that, "[a]ctionable harassment 'will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.'"[247] The plaintiff "never stated that his coworker's racist language detracted from his job performance, discouraged him from remaining on the job, or hindered his career advancement."[248]

The *Simmons* court also found that the plaintiff failed to point to evidence indicating how the alleged harassment interfered with his job performance.[249] Rather, the court

---

[245] *Barkley*, 433 F. App'x at 258.
[246] *Id.* (internal quotation marks omitted).
[247] *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993)).
[248] *Id.* at 258-59.
[249] *Simmons*, 557 F.Supp.3d at 779 (citing *Collier*, 827 F. App'x at 377 (citation omitted); *see, e.g., Hiner v. McHugh*, 546 F. App'x 401, 408 (5th Cir. 2013) (per curiam); *Johnson v. TCB Constr. Co.*, 334 F. App'x 666, 671 (5th Cir. 2009) (per curiam)).

noted that "the evidence reflects that Plaintiff, leading up to his termination, performed 'good work' and was amenable to learning new techniques."[250]

In the present case, Plaintiff failed to present evidence that any harassment interfered with his job performance or otherwise altered the terms and conditions of his employment. Indeed, Plaintiff attested he was a great employee who never received any complaints about his job performance.[251]  Plaintiff also testified that when Barnes would say offensive things to him, he "tried to just I guess you could say mute out, blank out, and try to keep working because I needed my job."[252]  Thus, the Court finds that Plaintiff has failed to present evidence that Barnes' conduct interfered with his work performance.

Accordingly, considering the totality of the circumstances and the foregoing factors, the Court finds that Plaintiff has failed to make a prima facie racial hostile work environment claim.

### D. Retaliation

Plaintiff contends his termination was in retaliation for reporting workplace safety violations and racial harassment by Barnes.  To establish a *prima facie* case of retaliation under the traditional *McDonnell Douglas* framework, "the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action."[253]  An employee engages in activity protected by Title VII when the employee has "opposed any practice made an unlawful

---

[250] *Simmons*, 557 F.Supp.3d at 779.
[251] Rec. Doc. 18-1, p. 16, ¶ 4.
[252] Rec. Doc. 12-4, Plaintiff's Depo, p. 50.
[253] *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

employment practice" by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[254]

If the plaintiff establishes a *prima facie* case, then the employer has the burden of production to provide "a legitimate, non-discriminatory reason" for the adverse employment action.[255]  If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual.[256]  "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence."[257]  Ultimately, in order to survive a motion for summary judgment, a plaintiff must show "a 'conflict in substantial evidence'" on the question of whether the employer would not have taken the adverse employment action but for the protected activity.[258]  "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions."[259]

As the Fifth Circuit explained in *Owens v. Circassia Pharms., Inc.*:

> An employee can establish pretext in the context of retaliation by showing that a discriminatory motive more likely motivated her employer's decision. In order to survive a motion for summary judgment, the plaintiff must show a conflict in substantial evidence on this issue. At this juncture, we consider numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.
> …

---

[254] 42 U.S.C. § 2000e–3(a); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).

[255] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).

[256] *Id.*

[257] *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

[258] *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 658 (5th Cir. 2012)).

[259] *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022)(citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)).

This inquiry **requires a greater showing than mere causal connection. It requires that the plaintiff show that protected conduct was *the* reason for the adverse action**. In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, **no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct**.[260]

Preliminarily, the Court notes that complaining about an employer's safety violations is not protected activity under Title VII.[261] However, Plaintiff has testified to his subjective belief that these safety violations affected African American employees in a discriminatory manner. In nearly every instance, Plaintiff couples his complaints of race discrimination and workplace safety, leaving it difficult to ascertain how often the complaints were about safety or about race. Nevertheless, Plaintiff easily satisfies a prima facie case of retaliation. Plaintiff testified that, on the morning of October 8, he complained to Scichowski about Barnes' purported racism during the incident. This qualifies as protected activity under Title VII. Plaintiff suffered an adverse employment action when he was terminated. And Plaintiff's termination came within days of his making this complaint to Scichowski. Under *McDonnell Douglas*, the burden shifts to Defendant to present competent summary judgment evidence of a non-discriminatory reason for Plaintiff's termination.

---

[260] *Id.* at 835 (emphasis added).

[261] *See* 42 U.S.C. § 2000e-2(a) (prohibiting employers from discriminating on the basis of race, color, religion, sex, or national origin); *accord Washington*, 299 Fed.Appx. at 401 ("Plaintiff's alleged reporting of M. Hanna to authorities for violating OSHA does not qualify as protected activity under Title VII."); *Mayers v. Shaw Indus.*, No. 3:09-2635-CMC-JRM, 2010 WL 5158418, at *4 (D.S.C. Nov. 23, 2010) (dismissing plaintiff's retaliation claim premised on reporting alleged safety violations on the ground that he did not engage in an activity protected by Title VII); *Acosta v. City of Phoenix*, No. CV-05-1810, 2006 WL 3499963, at *11 (D. Ariz. Dec. 4, 2006) (holding that plaintiff failed to establish a prima facie case of retaliation based on his complaints of employer's alleged violation of federal environmental laws and state safety regulations).

1.  <u>Legitimate, Non-Discriminatory Reason for Termination</u>

Defendant contends Plaintiff was terminated because he refused to run his routes even after Scichowski addressed his complaint and cleaned the truck.  Defendant points out the inconsistency between Plaintiff's declaration wherein he attests there was urine in the truck with Plaintiff's testimony that he never saw Barnes urinate inside the truck; rather, it was Plaintiff's assumption. Scichowski contends he addressed Plaintiff's complaints, cleaned the exterior of the truck, inspected the inside of the truck, retrieved more cleaning supplies, cleaned the inside of the truck, and placed a garbage bag over the driver's seat.[262]  Defendant claims Plaintiff never went back to the truck to inspect the cleaning; rather, he just continued to state he was uncomfortable driving it, so Scichowski sent him home since there was no other truck Plaintiff could drive.[263]

Later that day, Scichowski investigated the altercation.  He called Barnes to get his side of the story. Barnes denied Plaintiff's accusations and reported that Plaintiff was the aggressor who threatened him.  There were no other witnesses to the incident, so Scichowski could not determine who was the aggressor, and Scichowski's inspection of the truck revealed that Plaintiff's claim that Barnes urinated inside the truck was not true. Scichowski also found Plaintiff's refusal to run his routes unreasonable since he personally cleaned the truck, inside and out.   Defendant maintains that the only reason Plaintiff was terminated was because he refused to run his route on October 8; Plaintiff's report that Barnes was racist towards him played utterly no part in the decision.[264]

While Plaintiff contests the facts offered by Scichowski,Defendant points out that

---

[262] Rec. Doc. 12-1, Scichowski Declaration, ¶ 10.
[263] *Id*. at ¶ 11.
[264] *Id*. at ¶¶ 13-15.

some of Plaintiff's contested "facts" are based on mere assumptions.  Although Plaintiff states Scichowski never cleaned the inside of the truck, Scichowski points out that Plaintiff never went back to the truck to inspect its cleanliness.  Further, Scichowski argues that, as the investigator of the incident, it matters not if his conclusions were wrong, it only matters if his conclusions were based on race.

   2. Pretext

Plaintiff claims that the following facts are evidence of pretext in his termination: the inadequate investigation of Plaintiff's complaint about the October 8 incident; Scichowski's "false" statements and conclusions; Defendant's failure to follow its Employee Handbook by taking complaints of discrimination seriously and failing to discipline or terminate Barnes for his conduct; the delay in formally terminating Plaintiff on the following Monday rather than the Friday the incident occurred; and the alleged falsification or fabrication of termination documentation.

Defendant responds to Plaintiff's evidence of pretext, stating first that there is nothing pretextual about sending Plaintiff home on Friday and terminating him on Monday because Barnes was already gone when Plaintiff refused his route, and Scichowski needed time to investigate the incident before making a decision.  Further, Plaintiff's complaint that he was paid for a full workday on the day he was sent home is not evidence of pretext as he was not terminated at that time.

Regarding Defendant's adherence to its policies, Defendant maintains that it was compliant because the policy mandates that employees will not face retaliation if they make complaints, and the evidence "remains undisputed" that Scichowski terminated Plaintiff because he refused to run his route, not because he complained about race

discrimination or anything else.  Defendant notes that the Employee Handbook provides that an employee may be subject to immediate termination when the employee has "refus[ed] to perform assigned tasks."[265]

Defendant also argues that Plaintiff's disagreement with the adequacy and the results of Scichowski's investigation ignores well-established law that a plaintiff cannot create a fact issue on pretext by arguing the employer conducted an inadequate or erroneous investigation.[266]  Defendant distinguishes the cases cited by Plaintiff, particularly Plaintiff's reliance on the Fifth Circuit's holding in *Ion v. Chevron* that the employer's "failure to conduct even the most cursory investigation" constituted evidence of pretext.[267]  Defendant notes that the *Ion* decision was based on the failure to conduct any investigation; here, the evidence is uncontroverted that Scichowski performed an investigation.  The *Ion* court also noted that a plaintiff's denial of the misconduct for which he was terminated did not create a fact issue on pretext.[268]

Turning to Plaintiff's specific attacks on the investigation itself, Defendant argues that Scichowski's notes "do not purport to be in chronological order," and Scichowski's notes of Barnes' side of the story are not Scichowski's "conclusions, as plaintiff suggests."[269]  Plaintiff agues that Barnes' side of the story should have been completely disregarded based on the truck lights incident between Barnes and Seldon; however, Defendant counters that the witnesses to this incident claim that Barnes got angry at Seldon for not turning off his lights while Barnes was trying to back out, but neither witness

---

[265] Rec. Doc. 18-10, p. 20.
[266] Rec. Doc. 21, pp. 7-8 (citations omitted).
[267] *Ion v. Chevron*, 731 F.3d 379, 395 (5th Cir. 2013).
[268] *Id.* at 393-94 (citing *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010)).
[269] Rec. Doc. 21, pp. 8-9.

claims Barnes made any racial comments during this incident, and neither contend this incident was reported to Scichowski.

Defendant disputes Plaintiff's claim that it manufactured documentation to support his termination and that such documentation is evidence of pretext. Scichowski's handwritten note on February 25, 2021, wherein Scichowski documented that Plaintiff complained about being asked to take a route from another driver, was not used as a basis for any formal discipline. Also, Plaintiff testified that he never saw this note prior to his deposition;[270] thus, he has no personal knowledge upon which to base his speculation that the note was "fabricated." Finally, Plaintiff essentially admitted to the facts in the note when he testified that there were times he had to take a load from another driver, and he believed this was unfair.[271]

The Court finds that Plaintiff has failed to carry his burden to demonstrate substantial evidence of pretext. Plaintiff's reliance on the *Ion* case is misplaced because here, Scichowski performed an investigation into the October 8 incident. Plaintiff takes issue with Scichowski's investigation notes which show Barnes' side of the story. Without question, Plaintiff disputes Barnes' version of events. But there is nothing pretextual about a manager making notes of each side's account of events when investigating a dispute between employees, particularly where the manager did not witness the event. Further, it matters not whether Plaintiff would have conducted the investigation differently or reached different conclusions. The Fifth Circuit has made clear that "[e]mployment laws do not transform federal courts into human resources managers, so the inquiry is not whether [the employer] made a wise or even correct decision to terminate

---

[270] Rec. Doc. 18-5, Plaintiff Depo, p. 98.
[271] *Id.* at pp. 119-120.

[Plaintiff]."[272] "Instead, '[t]he ultimate determination ... is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable fact finder could infer discrimination.'"[273] "Employers are 'entitled to be unreasonable' in [their actions against] their employees 'so long as [they] do not act with discriminatory animus."[274]   In other words, "[e]ven if an employer's stated non-discriminatory justification lacks support, it does not violate Title VII if it acted on a reasonably held belief."[275] The Court finds that Plaintiff has failed to submit competent evidence to rebut Defendant's evidence of Scichowski's good faith belief that Plaintiff unreasonably refused to run his route.

Plaintiff has offered no competent summary judgment evidence that documents were "fabricated" or "manufactured" after his termination. This is pure speculation by Plaintiff. The fact that Plaintiff may not have seen a document before does not mean it was fabricated or render it pretextual.  Further, the summary judgment evidence in this matter confirms that the handwritten note regarding Plaintiff's complaint of taking over a route for Seldon was factual.  Moreover, Defendant does not claim that Plaintiff was terminated for a *history* of refusing to run routes; rather, he was terminated for refusing to run his route on October 8, and Defendant's policy allowed for immediate termination under this condition.

Plaintiff makes much of the fact that he was paid for full workdays on the Friday he was sent home and the following Monday when he came in and was terminated.  This fact is not the smoking gun Plaintiff suggests, and the Court finds no merit in the argument that this demonstrates pretext.

---

[272] *Owens*, 33 F.4th at 826 (citing Bryant v. Compass Grp. USA Inc., 413 F.3d 471, 478 (5th Cir. 2005)).
[273] *Id.* (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)).
[274] *Id.* (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)).
[275] *Daywalker v. UTMB at Galveston*, No . 22-40813, 2024 WL 94297, at *8 (5th Cir. Jan. 19, 2024).

Although Plaintiff testified that Defendant failed to follow its Employee Handbook's retaliation, discrimination, and termination policies, Defendant produced uncontroverted evidence that its policy allows for immediate termination for an employee's refusal to perform job duties.  To the extent Plaintiff complains that Barnes engaged in misconduct but was not disciplined, this argument still fails because a retaliation pretext determination requires a similarly situated comparator who engaged in the same conduct but did not receive the same discipline.[276]  The Court has already held that Plaintiff has presented no similarly situated comparator outside his protected class.

In *Turner v. Baylor Richardson Medical Center*, the plaintiff attempted to establish pretext by arguing that the employer failed to follow its employee handbook when implementing disciplinary procedures against her. The court rejected this argument, stating: "'A defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact.'"[277] The court further held that the plaintiff "has introduced no evidence suggesting that [the employer] adhered to its disciplinary policies differently in cases involving non-minority employees. Therefore, [the employer's] alleged failure to follow its policy does not serve to establish pretext."[278]

Plaintiff's claims of pretext are further undermined by fact that Plaintiff states he

---

[276] See *Lambert v. City of McComb, Miss.,* No. 5:19cv141-HSO-MTP, 2021 WL 6803718, at *8 (S.D. Miss. Mar. 12, 2021)(citations omitted); *see also Williams v. Texas Facilities Comm.*, No. A-17-CV-689-DAE, 2019 WL 2774333, at *4 (W.D. Tex. July 1, 2019)("One way to establish pretext is to show that an employer failed to follow its own policies and procedures[ ] [or] did not discipline other employees who committed similar misconduct ...." (citations omitted)).

[277] 476 F.3d 337, 346 (5th Cir. 2007)(quoting *Upshaw v. Dallas Heart Group*, 961 F.Supp. 997, 1002 (N.D.Tex.1997)).

[278] *Id.*

complained about race discrimination on multiple occasions, yet he was never terminated or disciplined in connection with those complaints. That prior complaints of race discrimination were not met with discipline or termination bolsters Defendant's evidence that the but-for cause of Plaintiff's termination on October 8 was his refusal to run his scheduled route.

Plaintiff has failed to rebut Defendant's legitimate non-discriminatory reason for Plaintiff's termination with evidence that is sufficient in "'nature, extent, and quality' to make the inferential leap to discrimination a rational one."[279]  There is no evidence from which a reasonable juror could conclude that Plaintiff's complaining about Barnes' purportedly racist conduct was *the* reason he was terminated on October 8.

### E.  Louisiana Employment Discrimination Laws

Plaintiff has asserted claims under the Louisiana Employment Discrimination Laws[280] and the Louisiana Human Rights Act.[281] According to La. R.S. 23:302, in Louisiana:

> "'Employer' means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter [ Chapter 3-a. Prohibited Discrimination in Employment] shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."

Clearly, an employer must have twenty or more employees to be liable for Louisiana state discrimination in employment claims, and La. R.S. 51:2256 specifically adopts by reference this definition of employer.

---

[279] *Owens*, 33 F.4th at 826 n.7 (quoting *Crawford*, 234 F.3d at 903).
[280] La. R.S. 23:301, *et seq*.
[281] La. R.S. 51:2256.

As the Court held above, Plaintiff has not offered competent summary judgment evidence to create a genuine issue of fact regarding the number of employees Defendant employs in the State of Louisiana. Defendant presented competent summary judgment evidence regarding the number of employees it employs in Louisiana by a manager in a position to have such knowledge about the company. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Louisiana claims.

## IV.    CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment[282] by Defendant, Brandon Company of Tennessee, LLC ("Defendant") is GRANTED.  Plaintiff, Tevin Scott's claims are dismissed WITH PREJUDICE.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, this 18th day of March , 2025.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[282] Rec. Doc. 12.